## Barnas, Appellant, *v.* Unemployment Compensation Board of Review.

Argued April 21, 1943. Before KELLER, P. J., BALD-RIGE, STADTFELD, RHODES, HIRT, KENWORTHEY and RENO, JJ.

*Arnold D. Smorto,* with him *C. Randolph Myers,* for appellant.

*R. Carlyle Fee,* Assistant Deputy Attorney General, with him *Charles R. Davis,* Special Deputy Attorney General, and *James H. Duff,* Attorney General, for appellee.

OPINION BY HIRT, J., July 16, 1943:

This appeal involves the question of claimant's right to unemployment compensation for the period of three weeks beginning December 11, 1941.

Koppers Coal Company operates two coal mines at

Sonman in Cambria County, one of them referred to as the "slope mine" and the other the "shaft mine." While the general management of both is the same, each has its mine superintendent and separate grievance committees represent the workers in each mine although all of the miners in both, numbering about 1,100, are members of the same local labor union. The mines are not interdependent; each is a distinct and separate operating unit.

The starting time of the day shift in both mines was 7 A.M., fixed by agreement between the union and an association of coal producers of which the company was a member; the agreement did not specifically refer to the starting time of other shifts. The work day was seven hours and for about thirteen months the starting time of the night shift in each of the mines was 4:30 P.M. On December 9, 1941, the company, without consulting its employees in the shaft mine notified them of an order effective the following day changing the starting time of the night shift to 7 P.M. (The company made no change in the working hours of either shift in the slope mine.) The shaft employees objected to the change. They reported for work the next afternoon at 4:30 but were excluded from the shaft with instructions to conform with the change in the working schedule. Although work was available to both the day and night shifts in this mine, all of the men went out on strike and voluntarily remained away from work for the period beginning December 10, 1941 and continuing through January 21, 1942. We are not concerned with the merits of that controversy although it may be noted that the change in starting time was not arbitrary. The slope mine was completely mechanized and equipped for continuous cutting and loading at each working place. The shaft mine was not; the cutters there, of necessity, were organized into a separate shift and the change was made to give them

an adequate period between mining shifts to prepare the coal for the loaders.

Claimant worked in the slope mine and was not affected by changed conditions in the shaft. However, when the employees in the shaft went on strike, all of the men of both shifts in the slope mine, including claimant, walked out and did not return to work until the end of the strike in the shaft mine on January 22, 1942.

No compensation is payable to an unemployed workman for an initial waiting period of three weeks under §401 of the Unemployment Compensation Law (Act of December 5, 1936, Second Ex. Sess. P. L. (1937) 2897) 43 PS 801, and by the same section "if the employe's total unemployment is due to a voluntary suspension of work resulting from an industrial dispute," he is ineligible for compensation for an additional three weeks waiting period. Claimant by former periods of unemployment had accumulated credits equal to the required initial waiting weeks and the period in question was the second three-weeks period of unemployment. The board of review, on undisputed facts, found that claimant was ineligible for compensation on the ground that his unemployment was voluntary and resulted from a labor dispute.

Claimant's position is fully stated in his first appeal from the refusal of compensation by the Bureau, as follows: "Due to the fact that the Slope and the Shaft miners are under the jurisdiction of the same Local, the men of both mines usually abide by the same agreements and are affected by the same; for this reason the Slope men are out with the Shaft men. We are all members of Local Union 1318 U. M. W. of A."

This was a strike in sympathy with that in the shaft mine. Conditions imposed on the workmen in the shaft did not affect the miners in the slope mine; they were wholly independent operations. Claimant and his

fellow workmen had no grievance against their employer either as to wages or conditions of their employment. A new condition was injected into the terms of their employment, not by the employer, but by the employees of the slope mine. The sole purpose of the walk-out was to aid an independent group in securing its demands. Work was available in the slope mine without change of working conditions throughout the period. The controversy as to change of starting time in the shaft mine. ultimately was decided in favor of the workmen by a permanent board of arbitration and the prior working hours of the night shift were reinstated on their decision. Claimant and his co-workers might have assumed that the controversy would be decided on its merits by the board created for the very purpose of deciding such disputes. However, under the Act there is nothing to prevent one group of workmen, without a direct interest in the controversy, from striking in support of the demands of others but if they do, the unemployment results from a labor dispute within the meaning of the Act and it must be regarded as voluntary unemployment whether or not the sympathy strike is ordered, authorized or approved by the labor union to which the workmen belong. The unemployment was not involuntary under the Act, as appellant contends, merely because of his membership in a labor union which ordered or supported a sympathy strike. They who thus make the labor dispute of others their own must be prepared to forego unemployment compensation for an additional waiting period of three weeks. This was decided in *Phillips v. Unemploy. Comp. Board,* 152 Pa. Superior Ct. 75, 30 A. 2d 718.

Order affirmed.