13 N.J. Super. 160 (1951)
80 A.2d 322
WILLIAM HARTWYK, PLAINTIFF,
v.
MONROE CALCULATING MACHINE COMPANY, A DELAWARE CORPORATION, AND UNITED ELECTRICAL, RADIO AND MACHINE WORKERS OF AMERICA, LOCAL NO. 431, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided April 18, 1951.
*161 Mr. William J. McCormack, attorney for plaintiff.
Mr. John S. Russell, attorney for defendant, Monroe Calculating Machine Company.
Mr. Morton Stavis, attorney for defendant, United Electrical, Radio and Machine Workers of America, Local No. 431.
STEIN, J.S.C.
Plaintiff, William Hartwyk, was employed by defendant, Monroe Calculating Machine Company, on August 7, 1942. In 1947 he was in the Factory Cost Department, when he was transferred to the cafeteria. He claims that he agreed to the transfer only if his seniority in the Factory Cost Department remained undisturbed. The defendant company denies that there was any such agreement and asserts that while there was plant-wide seniority, which was strictly observed in Hartwyk's case, there was no departmental seniority in the Factory Cost Department, departmental seniority existing only in a few departments which required special skills of the workmen, such as tool makers, screw machine operators and the like.
In 1949 there was a rumor that Hartwyk was coming back to the Factory Cost Department, whereupon other employees protested that if he came back to that department he should be the first to be transferred to another department if any curtailment was made in the Factory Cost Department.
*162 Hartwyk was not a member of the union. However, the union was the sole representative for collective bargaining of all employees of the company. The contract which existed between the union and the company provided for adjustment of grievances and for arbitration. On February 6, 1949, this claimed grievance by the employees of the Factory Cost Department was adjusted by determination that if Hartwyk returned to Factory Cost his plant-wide seniority would be undisturbed, but so far as the Factory Cost Department was concerned he would have to be transferred to other work before any of the other men were transferred. A memorandum of the agreement was written dated February 7, 1949, which is as follows:
"After a series of conferences on the matter of transferring William Hartwyk from the Cafeteria to MD-5, or to the position of factory cost clerk, it was agreed between us as follows:
That Hartwyk be offered a job in either of the two departments above mentioned, and that if he accepted the one in the Factory Cost Department, his company seniority, based on having been hired August 7, 1942, will not be effected; but so far as the Factory Cost Department is concerned, his seniority would begin the date that the transfer from Cafeteria to Factory Cost Department became effective. The purpose of this arrangement is to make sure that in the event of a curtailment of employment in the Factory Cost Department, Hartwyk would have to be transferred to other work before any of the men now employed in the Factory Cost Department.
These conditions were presented to Mr. Hartwyk, and he refused both jobs stating that he felt he was entitled to return to the Factory Cost Department with both plant and departmental seniority, dating to his original date of hire. It was explained to Hartwyk that his request could not be met, because the conditions of the transfer, outlined above, had been decided upon through the orderly process of collective bargaining between the company and the representatives of the union."
On October 31, 1949, there was a lay-off of 93 men. Hartwyk was offered his choice of some 20 different jobs. He refused them all and quit his employment with the company.
In February, 1950, invoking the provisions of the collective bargaining contract between the company and the union, Hartwyk sought arbitration of his claim that he was entitled to seniority in the Factory Cost Department and that he had *163 been laid off although persons employed by the company for a shorter period had been retained.
The collective bargaining contract between the company and the union provides for adjusting grievances in Article XII and, if no satisfactory settlement is arrived at under that Article, provides for arbitration in Article XIII, as follows:
"Section 1. All disputes, differences and grievances between the parties hereto, arising under the terms of this agreement, which are not satisfactorily settled following the procedure set forth in Article XII  Adjustment of Grievances  shall be referred to the President of the Company, or a representative he may delegate, and a representative of the Union for a decision.
Section 2. If a decision is not arrived at by the procedure set forth in Section 1 above, the Union shall select an arbitrator, and the Company shall select an arbitrator; both the Union representative and the Company representative shall select a disinterested third party mutually satisfactory to both representatives, the decision of any two of such three arbitrators to be final and binding upon both the Union and the Company.
Section 3. In the event that both the Union representative and the Company representative cannot agree in the selection of a disinterested third party, then the selection of said third party shall be left to the American Arbitration Association."
When arbitration requested by Hartwyk was agreed to by the company the president of the company selected as its representative Mr. Fisher, Assistant Works Manager. The union selected as its representative Mr. Ray Shattuck, its president. That Mr. Fisher was an official of the company and Mr. Shattuck was an official of the union was well known to plaintiff. These two, with the consent of plaintiff, selected as a disinterested third party Mr. Wallace Broadbent, a well known citizen and principal of one of our schools, who had no connection with either party. The arbitrators met, held hearings and arrived at a unanimous award in favor of the company.
Plaintiff now claims his removal from the company payroll was the result of a conspiracy and collusion between the company and the union; that he had no knowledge of the agreement made in February of 1949 until evidence thereof was brought out in the arbitration proceedings; that this agreement is invalid, discriminatory, violates plaintiff's seniority *164 rights, deprives plaintiff of his employment and his property right of seniority; that during the arbitration proceeding he learned for the first time that Shattuck was a party to the agreement; that Fisher knew of and was a party to the attempt to deprive plaintiff of his seniority; and during the arbitration was counselled, instructed and directed by company officials as to his conduct and his decision; that Fisher and Shattuck failed to make known to plaintiff that they had prejudged the seniority status and had agreed, prior to the arbitration proceeding, to render a decision adverse to plaintiff regardless of the facts; that the defendants were guilty of fraud and deceit in designating as representatives Fisher and Shattuck with knowledge that they had previously acted in concert on behalf of the company and the union in attempting to deprive plaintiff of his seniority and had, prior to their designation as representatives, prejudged the facts; and, finally, that in the arbitration proceeding Fisher considered himself the representative of Monroe, and his judgment was influenced thereby, and Shattuck considered himself as the representative of Local 431.
At the hearing before the arbitrators the memorandum dated February 7, 1949, was introduced into evidence. No objection was made at the time that the arbitrators had prejudged the matter and the hearing continued to its conclusion. The award was unanimous, and the hearings were continued and completed without objection by the plaintiff after the existence of the memorandum became known to him. If the agreement of February 7, 1949, constituted an objection to the arbitration, that question has been waived by plaintiff when he proceeded with the arbitration without objection. The rule is stated in 6 Corpus Juris Secundum, at page 187, as follows:
"Notwithstanding the existence of facts which may influence the judgment of an arbitrator, if a party, with knowledge of such facts, submits his case to the decision of such person, the objection is waived; and the same rule obtains where a party, who has agreed to submit to arbitration without knowledge of disqualifying facts, afterward, during the progress of the hearing, obtains knowledge *165 thereof but, nevertheless, proceeds, without objection to the making of an award. These principles apply to practically all types of objections, including the objection that the person selected as arbitrator had formed an opinion on the merits of the controversy; that he had had business relations with a party to the submission; that he was related to the party in favor of whom the award was made; or that he had an interest in the subject matter of the submission."
In Chicago, R.I. & P. Ry. Co. v. Union Pac. R. Co., 254 Fed. 235, it was held:
"That one of the arbitrators signing the majority award was disqualified because of interest is true. He was general superintendent of one of the tenant roads, which appellant at all times knew. Almost a month before the award it discovered the mistake in contract, and from that time knew that his road was interested in the award, and therefore that the disqualification existed. Not only did it make no objection thereafter, but it proceeded with the arbitration and made no objection of this kind until after the award. This was a waiver."
In San Carlo Opera Co. v. Conley, 72 Fed. Supp. 825, 833, that court held:
"Where a party to an arbitration has knowledge of facts possibly indicating bias or prejudice on the part of an arbitrator he cannot remain silent and then later object to the decision of the arbitrators on that ground. His silence and inaction constitute a waiver of the objection."
Moreover, the issues raised present for decision questions of fact. Considering all the testimony it cannot be concluded that the arbitrators were guilty of fraud and deceit nor that they were selected for the purpose of depriving plaintiff of his right to seniority since the entire proceeding was conducted within and under the provisions of the collective bargaining agreement. In arbitration every intendment is indulged in favor of the award; and it is subject to impeachment only in a clear case. Held v. Comfort Bus Line, Inc., 136 N.J.L. 640 (Sup. Ct. 1948). Arbitration proceedings are favored by the courts and the courts will make all fair presumptions to sustain an award. Eastern Engineering Co. v. Ocean City, 11 N.J. Misc. 508 (Sup. Ct. 1933).
Complaint dismissed.