PER CURIAM.
The petitioner and those associated with him in this appeal filed this petition for cer-tiorari seeking review of an order of the Board of Review of the Florida Industrial Commission, affirming a special examiner’s determination that the claimants were not entitled to unemployment compensation benefits.
The determination of the special examiner, setting forth the history of the dispute *802 and a summation of the facts presented at the hearing, reads in part as follows:
“After due notice to the parties, a hearing was held at Hialeah, Florida, on August 27 and 28, 1962. The claimant or others of his grade or class of workers appeared at the hearing. The majority of all claimants were represented by their union president and general chairman and counsel. The employer was represented by his director-employment and employee activities and by counsel. The Florida Industrial Commission was represented by its assistant general counsel.
* * * * * *
“On June 26, 1962, the Commission issued a Notice of Labor Dispute in which it determined that there was a labor dispute in existence between employer (-14080) and the members of the Flight Engineers International Association, hereinafter referred to as ‘F.E.I.A.’ and its members employed by the employer and that such dispute commenced June 23, 1962. On July 24, 1962, the Commission, pursuant to Section 443.07(3) (b), Florida Statutes, 1961, designated a Special Examiner to hold hearings and make determinations as to the benefit rights of those employees of employer (-14080) who have failed or refused to accept employment offered by the employer since June 23, 1962.
“The employer (-14080) is an interstate commercial air carrier of passengers and freight, operating in Florida and in other states and countries. On June 23, 1962, the claimant was employed by employer (-14080) at its Miami Base as a worker of a grade or class, hereinafter referred to as ‘machinist’, whose duly authorized collective bargaining agent is the International Association of Machinists, District 100, hereinafter referred to as T.A.M.’
“Sometime prior to June 23, 1962, the employer and F.E.I.A. were negotiating for a new collective bargaining agreement, covering the terms and conditions of employment of the flight engineers employed by the employer, after expiration of the old agreement.
“The employer and F.E.I.A. failed to negotiate a new agreement and on June 23, 1962, F.E.I.A. called a system-wide strike against the employer and the flight engineers employed by it withheld their services from the employer and established picket lines at bases of the employer in various cities. Miami was the only Florida base where such picket lines were established.
“As of the date of the Special Examiner’s hearing, F.E.I.A. and the employer had failed to resolve their differences and the strike and picketing still existed. Picketing by flight engineers at the Miami base was at all times peaceful and no pickets exercised violence or threats of violence directed at any employees who reported or attempted to report for work for the employer.
“As a result of the strike, the employer, later on June 23, 1962, shut down its operations and notified most of its employees, other than flight engineers, that they were temporarily removed from the payroll until further notice, due to the inability of the employer to continue its operations. Among those so notified were the claimant and/or others of his grade or class.
“On or about July 11, 1962, the employer resumed limited operations requiring reemployment of small numbers of claimant-machinists to perform regular duties on a temporary day-to-day basis on aircraft leased by the employer to other airlines. On or about July 23, 1962, the employer resumed a few of its flights requiring reemployment of still other small numbers of claimant-machinists to perform regular duties on a temporary day-to-day basis with respect to the resumed flights.
*803 “Between June 23, 1962, and August 2, 1962, the president and general ■chairman of District 100 of I.A.M. drafted, signed and caused to he distributed five bulletins to his membership, including the claimant and others ■of his grade or class. One of these bulletins dated June 29, 1962, stated the following on page three, thereof:
“ ‘We are instructing our membership to do the following three things:
“ ‘1. If, during the lockout, you ,are approached and offered work by the carrier, contact your Local Lodge or Committee for a picket line pass prior to reporting to work. s|« ) )>
■“A second bulletin dated August 1, 1962, stated the following:
“ ‘If you violate the agreement by accepting temporary employment now you will set a precedent for the Company to use against you in the future.’ ”
■“A bulletin dated August 2, 1962, contains the following statement:
“‘1. The Agreement provides for written communication, not phone call. You are not obligated under the agreement to respond to a telephone communication for recall.’ ”
“From June 23, 1962, to on or about July 16, 1962, claimant and others of his grade or class were furnished, upon request, a picket line pass issued by F.E.I.A. authorizing I.A.M. members to cross the F.E.I.A. picket line. Such picket line passes were countersigned by the president and general chairman of I.A.M., District 100, and one of the major officers of F.E.I.A. On or about July 16, 1962, F.E.I.A. ceased issuing these passes and they were no longer furnished to I.A.M. members after that date.
“Beginning in July 1962, claimant and/or other members of his grade or class were duly notified by the employer of an offer to return to work to perform his regular duties on a temporary day-to-day basis with respect to the leased aircraft and resumed flights of the employer. Since July 16, 1962, the claimant or others of his grade or class failed or refused to cross the picket lines of the striking flight engineers to accept the offered work and to perform their assigned duties, for the sole reason that they honored or deemed it contrary to their union principles to cross them. On the other hand, other machinists did accept and perform such work.
“On August 21, 1962, the employer notified claimant and others of his grade or class of anticipated expansion of services commencing August 23, 1962, with anticipated resumption of full operations on September 13, 1962. Claimant was also advised that while many of his grade or class of workers would be recalled for employment, reduction in force requiring layoffs of a considerable number of machinists would be anticipated.
“Since August 21, 1962, all offers of employment made by the employer to machinists were accepted and no machinists refused employment because of their failure or refusal to cross a picket line. On August 27, 1962, many machinists received letters from the employer notifying them that they would be placed on layoff status with retention of seniority rights effective September 13, 1962.”
We are concerned only with the period from July 16, 1962 through August 20, 1962, during which time the special examiner found that the claimants were disqualified for unemployment compensation benefits because (1) they were unemployed due to a labor dispute in active progress at the premises where they were last employed and (2) they belong to a grade or class of workers of which there were members employed at the premises at which the labor dispute *804 occurred, some of whom participated in the labor dispute.
The record clearly shows that during this period a labor dispute existed between Eastern Air Lines and the Flight Engineers International Association which resulted in the claimants’ unemployment. Under § 443.06(4), Fla.Stat., F.S.A.,[1] the claimants thereby became disqualified for unemployment benefits unless it was shown to the satisfaction of the commission that the conditions of § 443.06(4) (a) and (b) [2] were met. While the burden may be on the commission to show that the claimants have become disqualified for unemployment compensation because of a labor dispute, it is generally held that the burden is on the claimants to prove that they have met the requirements of eligibility prescribed by § 443.06(4) (a) and (b). Florida Industrial Commission v. Ciarlante, Fla.1955, 84 So.2d 1.
The special examiner found that the claimants failed to remove their disqualification by proving that they fell within § 443.06(4) (b). Two essential factual questions were decided by the special examiner in reaching his conclusion. The first was that some of the members of the claimants’ union participated in the labor dispute between their employer and the F.E.I.A. The second was that the claimants were of the same grade or class as those members who participated in the labor dispute.
It has been uniformly recognized that the voluntary refusal to cross a peaceful picket line constitutes participation in a labor dispute within the meaning of statutes such as ours.[3] By refusing to cross a picket line such persons add their strength to the cause of the strikers and thereby place the strikers in a better bargaining position. A review of the record discloses ample support for the finding that certain members of the claimants’ union refused to cross the picket line and report to work. Their refusal was made voluntarily and without fear of bodily harm. Thus, they must be held to have participated in the labor dispute.
Further, we find substantial competent evidence in the record to support the finding that the claimants were of the same grade or class as those workers who refused to cross the F.E.I.A. picket line. While *805 there is no hard and fast rule for making such determination, we deem the following facts, taken as a whole, sufficient to justify the finding:
(1) The claimants are members of the same union of machinists as those workers who participated in the strike,[4]
(2) The claimants’ union, through its president and general chairman, distributed to its membership various bulletins instructing them to obtain a picket line pass and indicating a desire that they not accept temporary employment,[5]
(3) The claimants’ union had the exclusive right to bargain with the employer on behalf of its membership and among its members there was an interdependence of terms and conditions of employment.[6]
In rendering this decision we are confined to language of the statute. It is not within the province of the court to consider arguments of social policy or to question the wisdom of the statute in holding a majority of workers responsible for the acts of a minority. The correction of any ills which might result from the .application of this section of the statute must be addressed to the legislature.
It is our opinion that the decision brought here for review conforms to the existing law and is supported by substantial competent evidence. Meyer v. Florida Industrial Commission, Fla.App.1959, 117 So.2d 216; Teague v. Florida Industrial Commission, Fla.App.1958, 104 So.2d 612.
The other contentions raised by the petitioner have been considered and are found to be without merit.
Accordingly, the petition for certiorari' should be denied.
It is so ordered.

.§ 443.06 Disqualification for benefits
“(4) For any week with respect to which the commission finds that his total or partial unemployment is due to a labor dispute in active progress which exists at the factory, establishment or other premises at which he is or was last employed ; provided, that this subsection shall not apply if it is shown to the satisfaction of the commission that:
“(a) He is not participating in or financing, or directly interested in the labor dispute which is in active progress; provided, however, that the payment of regular union dues shall not be construed as financing a labor dispute within the meaning of this section; and
“(b) He does not belong to a grade or class of workers of which immediately before the commencement of the labor dispute there were members employed at the premises at which the labor dispute occurs any of whom are participating in, or financing, or directly interested in the dispute; provided, that if in any case separate branches of work which are commonly conducted as separate businesses in separate premises, or are conducted in separate departments of the same premises, each department shall, for the purpose of this subsection be deemed to be a separate factory, establishment or other premises.”

. The petitioners contend that they need only show that they do not fall within either § 443.06(4) (a) or (b) in order to avoid disqualification. The decisions throughout this country fail to support this contention. See United States Steel Corp. v. Unemployment Comp. Bd. of Review, 189 Pa.Super. 362, 150 A.2d 361 (1959).

. See Brown v. Maryland Unemployment Comp. Bd., 189 Md. 233, 55 A.2d 696, 701 (1947); Meyer v. Industrial Commission of Missouri, 240 Mo.App. 1022, 223 S.W.2d 835 (1949); Soricelli v. Bd. of Review, etc., 46 N.J.Super. 299, 134 A. 2d 723 (1957); In re Persons Employed at St. Paul & Tacoma Lumber Co., 7 Wash.2d 580, 110 P.2d 877 (1941); Annot., 28 A.L.R.2d 333.

. See Copen v. Hix, 130 W.Va. 343, 43 S.E.2d 382 (1947).

. See Byerly v. Unemployment Comp. Bd. of Review, 171 Pa.Super. 303, 80 A.2d 322, (1952); In re Persons Employed at St. Paul & Tacoma Lumber Co., supra; Copen v. Hix, supra.

. See Adams v. Review Bd. of Indiana Employment Sec. Div., 121 Ind.App. 273, 98 N.E.2d 681 (1951).