No. C-498

F. R. Orr Construction Co., Inc. v. Industrial Commission of the State of Colorado (Ex-officio Unemployment Compensation Commission of Colorado) and Benjamin Trujillo and Pedro Duran

Wilkins Company, Inc. v. Industrial Commission of the State of Colorado (Ex-officio Unemployment Compensation Commission of Colorado) and Gary Burkholder

Gerald H. Phipps, Inc. v. Industrial Commission of the State of Colorado (Ex-officio Unemployment Compensation Commission of Colorado) and Edmond Bustos, Frank A. Eckholt, Guadalupe Flores, Ernest Moberly, Jose Quintana, Dale Smith, Herman Surratt, David Trujillo and William Vestal

N. G. Petry Construction Co. v. Industrial Commission of the State of Colorado (Ex-officio Unemployment Compensation Commission of Colorado) and Gilbert C. Albert, Charles E. Boyd, Warren E. Cole, Sr., Van Evans, Cruz Florez, Terry Golden, Clarence O. Harrelson, Morland W. Jess, Ted K. Kafer, Max B. Kochenower, Garfield Martinez, Charles J. Noon, John P. Noon, James Oakes, Clarence A. Parra, Wilbur J. Rea, Dale Romero, and Frank J. Ruiz

G. E. Johnson Construction Co. v. Industrial Commission of the State of Colorado (Ex-officio Unemployment Compensation Commission of Colorado) and Robert L. Hixon and Gus Santisteven

Hensel Phelps Construction Co. v. Industrial Commission of the State of Colorado (Ex-officio Unemployment Compensation Commission of Colorado) and Ray Cassady, Kenneth H. Johnson, Jim H. Trujillo and Bennie J. Vasquez

S. Bud Brady, Inc. v. Industrial Commission of the State of

Colorado (Ex-officio Unemployment Compensation Commission of Colorado) and Joseph L. Trujillo and Fidel H. Terriquez

(534 P.2d 785)

Decided April 7, 1975.

Robert G. Good, Kenneth R. Stettner, for petitioners.

John P. Moore, Attorney General, John E. Bush, Deputy, Robert L. Harris, Assistant, for respondents.

*En Banc.*

MR. JUSTICE LEE delivered the opinion of the Court.

We granted certiorari to review the decision of the court of appeals in *Orr Const. v. Indust. Comm.,* 33 Colo. App. 326, 522 P.2d 117. Finding no error, we affirm the judgment.

Petitioners are construction companies who are members of the Associated General Contractors (AGC). Each was ordered by the Industrial Commission (Ex Officio Unemployment Compensation Commission) to pay unemployment compensation to various employees who were out of work as a result of a general work

stoppage at the respective construction sites during a carpenters' union strike in May of 1972 by the Carpenters District Council of Southern Colorado and the Carpenters District Council of Denver and Vicinity. Originally, the commission's deputy denied the claims filed by numerous employees of the petitioners. On appeal to the referee, thirty-eight claims were allowed. The referee's decisions were affirmed by the Industrial Commission. The court of appeals affirmed the orders of the commission on appeal to that court.

We briefly review the facts giving rise to the controversy. The carpenters' union called a strike against the AGC members when the two bargaining groups were unable to reach agreement on a new labor contract. On May 15, 1972, the carpenters stopped work at all sites and established picket lines at selected job sites of the petitioners. At that time, claiming an inability to continue work due to heavy absenteeism in the other crafts, all the members of the AGC shut down work on all job sites, whether picketed or not. The claimants are members of other craft unions: laborers, operating engineers, cement masons, iron workers, and tile layers, who were without work due to the shutdown. None of these unions or their members was directly involved in the labor dispute; they had all previously negotiated and signed separate contracts with the AGC.

The commission and the court of appeals affirmed that a lockout by the employer existed with regard to the other craft union workers and that they were unemployed due to lack of work. While admitting that the AGC did engage in a defensive lockout of the employees, the petitioners maintain that they did so only because the claimants were actually participating in the strike by honoring the picket lines of the carpenters to such a degree that it became impossible to continue work profitably.

When initially applying for benefits, the claimants indicated in a form entitled "Labor Dispute Separation Information" that they had refused to cross the picket lines. When the claimants testified before the commission's referee, nearly all explained that this was not accurate and that they had not in fact refused to cross the picket lines. Most stated that if given the chance they would have worked despite the pickets. In explaining the inconsistent answers, several stated that when filling out the informa-

tion forms they were instructed by a commission employee that if there was a picket line and they did not work, then, for the purposes of the form, they had refused to cross the line, no matter what their actual motivation had been.

The granting or denial of benefits in the cases before us depends, as recognized below, on the application and interpretation of C.R.S. 1963, 82-4-9[1] which governs the qualification of a claimant for benefits in the event his unemployment is due to a labor dispute. Unless disqualified under that section, then the claimants are entitled to benefits under section 82-4-8.[2]

## I.

In order to determine the proper meaning of the particular section in question, it is necessary to view it first in terms of the entirety of the act of which it is a part. All of articles 70 through 82 of C.R.S. 1973 are a part of the Colorado Employment Security Act, passed by the general assembly in 1936. L. 1936, 3rd Ex. Sess., p. 13, sec. 1. The passage of this act in Colorado was not an isolated event. This was one of fifty-one statutes, nearly identical in language, passed in every jurisdiction in the country in the period between 1932 and 1939, as part of the nation's response to the Great Depression.[3] All were drafted in compliance with federal standards for federal funding purposes.

The primary purpose of the act, as specifically enunciated in section 82-1-2,[4] is to provide state relief to those ". . . unemployed through no fault of their own." This Court has held that the act must be liberally construed in order to effectuate the purpose of compensating those who are involuntarily unemployed. *Sandoval v. Industrial Com.,* 110 Colo. 108, 130 P.2d 930.

Section 82-4-9 of the act provides in part as follows:
*"Strikes or other labor disputes.* — (1) An individual shall be ineligible for unemployment compensation benefits for any week with respect to which the department finds that his total or partial

---

[1]Now section 8-73-109, C.R.S. 1973.

[2]Now section 8-73-108, C.R.S. 1973.

[3]For a comparison of the various statutes, *see* Haggart, Virgil, *Unemployment Compensation During Labor Disputes,* 37 Neb. L. Rev. 668.

[4]Now section 8-70-102, C.R.S. 1973.

unemployment is due to a strike or labor dispute in the factory, establishment, or other premises in which he was employed and thereafter for such reasonable period of time, if any, as may be necessary for such factory, establishment, or other premises to resume normal operations. For the purposes of this section, a lockout by any member of a multi-employer bargaining unit shall constitute a labor dispute if such lockout was initiated because of a strike or labor dispute involving any member of such multi-employer bargaining unit; provided, that if his unemployment is due to a lockout involving a multi-employer bargaining unit member or otherwise, the individual will not be determined ineligible unless the lockout results from the demands of employees as distinguished from an effort on the part of the employer to deprive the employees of some advantage they already possess.

''(2)(a) This section shall not apply if it is shown to the satisfaction of the department:

''(b) He is not participating in or financing or directly interested in the strike or labor dispute; and

''(c) He does not belong to a grade or class of workers of which, immediately before the commencement of the strike or labor dispute, there were members employed at the premises at which the strike or labor dispute occurs, any of whom are participating in or financing or directly interested in the strike or labor dispute.''

In general, the disqualification provisions of section 82-4-9(1), with which we are here concerned, are aimed at those who are voluntarily unemployed while involved in some labor dispute. There are, however, workers who find themselves out of work through no fault of their own but rather because of a dispute occurring between other workers and their employer. As these workers would also find themselves disqualified through the broad language of section 82-4-9(1), exceptions to the disqualification provisions were added in section 82-4-9(2), under which a worker might be requalified for benefits if his connection with the dispute was remote. If he is neither directly interested in the dispute's outcome, nor participating in or financing it, and is not the same grade or class of any worker who is so involved with the dispute, then, under section 82-4-9(2), he is not disqualified from receiving benefits.

## II.

■ There is no dispute that initially each of the claimants was automatically disqualified under section 82-4-9(1) because his unemployment was due to a "strike or labor dispute." The question is whether the evidence before the referee was sufficient to show that the claimants were requalified to receive unemployment benefits under the provisions of section 82-4-9(2). Clearly, as the court of appeals held, the burden of proof is upon the claimant who is prima facie disqualified under subsection (1) to show by a preponderance of the evidence that he is requalified to receive benefits under subsection (2). *Burak v. American Co.,* 134 Colo. 255, 302 P.2d 182.

■ We agree with the court of appeals that the evidence before the referee and the commission in the instance of each claimant supports the finding that none of the claimants was directly interested in the outcome of the labor dispute, nor were they participating in the strike, or financing the strike. It is admitted that none of the claimants would be benefited or adversely affected by the outcome of the labor dispute, inasmuch as the several unions of which they were members had concluded their bargaining agreements prior to the strike in question.

■ If the claimants had chosen to honor the carpenters' picket lines, their voluntary refusal to cross the picket line would as a matter of law have constituted participation by the claimants in the labor dispute, thus rendering them disqualified for unemployment benefits under subsection (2)(b). *Various Claimants and Const. U. v. Employment Secur. Com'n.,* 92 Ariz. 183, 375 P.2d 380; *Thomas v. California Emp. Stab. Com.,* 39 Cal.2d 501, 247 P.2d 561; *Ashmead v. Florida Industrial Commission,* 155 So.2d 801 (Fla. App.); *Achenback v. Review Board of Ind. Emp. Sec. Div.,* 242 Ind. 655, 179 N.E.2d 873; *Baltimore Typographical Union v. Hearst Corp.,* 246 Md. 308, 228 A.2d 410; *Barnas Appel. v. Unemp. Comp. Bd.,* 152 Pa. Super. 429, 33 A.2d 258; *Lexes v. Industrial Commission,* 121 Utah 551, 243 P.2d 964; *In Re St. Paul & Tacoma Lumber Co.,* 7 Wash.2d 580, 110 P.2d 877; 28 A.L.R.2d 333 § 20; *see also* Shadur, *Unemployment Benefits and the "Labor Disputes" Disqualification,* 17 U. Chi. L. Rev. 294; comment, 49 Col. L. Rev. 550. In each

case here, there was evidence to support the finding that the claimant did not honor the picket lines, and did not participate in the strike in that respect. Nor was there anything in the record to show that the claimants were in any way financing the strike.

As to the claimants before us, all of whose claims were allowed, the award was based on a finding of nonparticipation in the strike. These findings were supported by competent evidence before the referee, whose findings were adopted by the commission and were affirmed on appeal to the court of appeals.

### III.

Petitioners, nevertheless, contend that the claimants were disqualified under section 82-4-9(2)(c), in that they did not establish that they did not "belong to a grade or class of workers of which, immediately before the commencement of the strike or labor dispute, there were members employed at the premises at which the strike or labor dispute occurs, any of whom are participating in or financing or directly interested in the strike or labor dispute."

■ Petitioners urge that we broadly construe the "grade or class" wording of subsection (2)(c) concerning requalification. They argue that if any single member of the unions to which claimants belong did honor the picket line and participate in the strike, then all such union members, at every site, must be disqualified as being a member of the same grade or class. We note that some claimants, who are not before this Court, were disqualified by the deputy for having participated in the strike by refusing to cross the picket lines. They did not appeal the denial of their claims for unemployment compensation.

In giving the "grade or class" provision the broad reading argued for by petitioners, virtually no one could ever be requalified under subsection (2). We do not believe such a result was intended by the legislature. It is our understanding that the grade or class provision was inserted in the statute for the purpose of *narrowing* the disqualification, not broadening it. *Cf.* Shadur, *supra*. To read the section so broadly would nullify the legislature's purpose in subsections (2)(a), (b) and (c) to provide for requalification for unemployment benefits.

■ The grade or class provision should operate only in the

limited area involving situations in which the individual's proximity to the dispute is not close enough to disqualify him personally under subsection (2)(b) but whose indirect interest is great enough so that paying him benefits would permit evasion of the basic purposes of the act. In discussing this concept of indirect interest and the extent thereof necessary to bring into operation the disqualification provisions of subsection (2)(c), the court in *Cameron v. De Board,* 230 Or. 411, 370 P.2d 709, which our court of appeals followed, stated:

"* * * Negligible interest, i.e., remote interest or mere sympathy, does not disqualify at all. Thus, we may disregard the kind of interest which might be characterized as generic in labor relations, i.e., the sympathy a member of one union might entertain upon general principles for the objectives of another union. The kind of indirect interest which will bring a claimant into a class contemplated by (3)(b) [subsection (2)(c)] therefore lies between direct and negligible, or inconsequential, interest."

 Whether or not such an indirect interest exists between a claimant and the particular labor dispute is always a factual determination depending on all the circumstances of each case. No hard and fast rule is applicable in all cases.

 In the present cases, the court of appeals properly determined that whether a worker is of the same grade or class was a fact question, here determined by the referee and the commission adverse to petitioners.

 We agree with the court of appeals that the criteria set forth in *Cameron, supra,* — that of integration of work and community of interest — are significant factors in the determination of whether a worker may be disqualified as a member of a grade or class within the meaning of the statute. We would suggest additionally that it may be necessary in a particular case, when the labor dispute makes it a significant factor, to consider and inquire into other factors in determining the grade or class, among which may be the occupation involved, the similarity of the work involved, the relative skill levels, methods or rates of pay, and work conditions. *Cameron v. De Board, supra; Queener v. Magnet Mills,* 179 Tenn. 416, 167 S.W.2d 1; *Kieckhefer Container Co. v. Unemployment C. Com'n.,* 125 N.J.L.

52, 13 A.2d 646; *Members of Iron Workers' Union v. Industrial Com'n.*, 104 Utah 242, 139 P.2d 208.[5]

As noted by the court of appeals, the major purpose of the "grade or class" provision is to prevent evasion of the disqualification provisions in subsection (2) of the act, as, for example, in the key man strike situation. Were it not for the "grade or class" provision, the employees involved in the key man strike might avoid disqualification by striking with only key workers, thereby placing all workers out of work but disqualifying only those actively striking. The effect would be to greatly increase the strike fund by reducing the drain on it through the use of unemployment compensation and to violate the principle of neutrality of the state in respect to labor disputes.

The record in the present cases shows no real connection between the outcome of the carpenters' dispute and the situation of the other craft workers. All factors in the present cases indicate an almost complete independence of the claimants from the carpenters and their dispute. Claimants had settled their contracts prior to the carpenters' strike and there was no correlation between the rates of pay of the carpenters and the claimants. Nor did claimants stand to benefit from the strike, as their wages had been settled previously. The effects of the strike, as far as claimants were concerned, were all negative: they had nothing to gain and had only a loss of income due to lack of work because of the strike. Although there may have been a high degree of integration in the work on many of the construction projects, as the court of appeals observed, absent a real community of interest factor between the striking carpenters' union and the nonstriking other crafts, the integration of work factor is insufficient to bar requalification for unemployment benefits. *Cameron, supra.*

We find it unnecessary to discuss petitioners' other contentions for reversal, deeming them to be without merit in the circumstances of this case. Suffice it to say, the conclusion that the unemployment of the claimants was involuntary within the meaning of the Colorado Employment Security Act is warranted by the

---

[5]For a detailed discussion of the determination of a grade or class, *see* Shadur, *supra,* pp. 332 through 337.

record, and payment of unemployment benefits is in furtherance of the legislative declaration of public policy, to compensate workers who are unemployed through no fault of their own.

The judgment is affirmed.

MR. JUSTICE ERICKSON does not participate.