Rollins D. LAMB, Keith Bailiff, Chris Barnhart, Harold R. Campbell, Gale E. Foster, Dennie A. Fowler, Richard A. Klassen, Charles N. Markle, Robert E. Martin, Robert H. Meyer, Michael A. Mjelde, Ray E. Steele, James N. Valdez, and David R. Welden, Petitioners,

v.

INDUSTRIAL COMMISSION OF the STATE of Colorado and Newberry-State, Inc., (Employer), Respondents.

Vern LUOMA and Jessie Hayes, Jr., Petitioners,

v.

INDUSTRIAL COMMISSION OF the STATE of Colorado and Intermountain Electric, Respondents.

Nos. 82CA0735, 82CA0736.

Colorado Court of Appeals, Div. II.

March 10, 1983.

Hornbein, MacDonald, Fattor & Buckley, James C. Fattor, Rhett K. Dacus, Denver, for petitioners.

J.D. MacFarlane, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Joel W. Cantrick, Sp. Asst. Atty. Gen., Christa D. Taylor, Asst. Atty. Gen., Denver, for respondents.

TURSI, Judge.

Claimants seek review of final orders of the Industrial Commission denying them unemployment benefits for the reason that they refused to cross union picket lines. We affirm.

All of the claimants were journeymen or apprentice electricians and members of, or working under permit of, the International Brotherhood of Electrical Workers (IBEW). Fourteen of the claimants were employed by Newberry State, Inc. (Newberry), at one job site and two claimants were employed by Intermountain Electric, Inc. (Intermoun-tain), at another site. Separate hearings were held for the two groups of employees, but the cases were consolidated for purposes of this review.

The facts common to all of the claims are that the carpenters' union commenced a strike and established picket lines at both job sites. Claimants' union was not on strike and was not contributing financially to the carpenters' strike.

On the day before the strike, the Newberry claimants were ordered to gather all the employer's tools and lock them in an off-site warehouse. Claimants were also permitted to use the employer's truck to gather their personal tools and store them off the job. These events were unusual because tools are normally stored in common "gang boxes" on the job site. Claimants were also asked to hand in all of the employer's keys. One claimant testified that he "interpreted" these circumstances to mean that the employer was shutting down the job.

Nevertheless, claimants reported for work the next morning and encountered the carpenters' picket line. One claimant testified that none of the employer's supervisors were present at the gate to provide access to the tools. However, claimants could not see the entire job site from the picket line and did not cross the picket line to determine whether tools and supervision were available.

The two Intermountain claimants also encountered a carpenters' picket line at the job site, and neither crossed the line. One of the claimants testified that on the morning of the strike he spoke with his foreman and was told there was no work because of the carpenters' strike. Claimant also spoke with the employer's field supervisor and was told that no work was available.

Intermountain's vice president testified that on the morning of the strike he telephoned claimants' union hall and spoke with the union business agent. He told the union agent that all Intermountain jobs were open and that work was available to anyone who wanted it.

Two claimants, one employed by Newberry and one by Intermountain, were apprentice electricians. The evidence indicated that apprentices were contractually prohibited from working without the supervision of a journeyman.

The commission found that claimants reported for work on the morning of the strike, regardless of the fact that the tools had been stored off the job. However, upon encountering the picket line, claimants made no effort to cross the line and determine whether work and supervision were available on the job. The commission further found that the decisions of the apprentice electricians not to cross the picket line were not motivated by a lack of journeymen on the job, but by the apprentices' decisions not to cross the picket line of another craft. The commission made the additional finding that the employer did not announce that the job was shut down or that claimants were laid off, and concluded that claimants were disqualified from receiving benefits for refusal to cross a picket line.

On the Intermountain claims the commission found that the employer contacted claimants' union and gave notice that work was available at the job site. It concluded that notice to the union constituted notice to claimants, but claimants elected to honor the picket line, and consequently, were disqualified from receiving benefits for refusal to cross a picket line. The Commission adopted the findings and conclusions of the referee.

Section 8–73–109(1), C.R.S.1973, provides that a claimant is not entitled to benefits for any period of unemployment attributable to a "strike or labor dispute" on the premises where the worker is employed. However, where a claimant does not "participate" in the strike, he may recover benefits. Participation is defined to include "refusal to cross the picket line." Section 8–73–109(2), C.R.S.1973 (1981 Cum.Supp.).

Claimants contend that the Commission erred in finding that they participated in the strike by refusing to cross the picket lines because their failure to cross the picket lines was "involuntary." Specifically, claimants contend that the record demonstrates that no work was available and any attempt to cross the picket lines would have been superfluous. We disagree.

I

■ The question of whether claimants refused to cross the picket lines is one of fact, and the determination of the Commission in this regard may not be disturbed on review if supported by substantial evidence. *See Sims v. Industrial Commission*, 627 P.2d 1107 (Colo.1981). Furthermore, the burden of proof rested with claimants to establish that they did not "participate" in the strike by refusing to cross the picket lines. *F.R. Orr Construction Co. v. Industrial Commission*, 188 Colo. 173, 534 P.2d 785 (1975); *Burak v. American Smelting & Refining Co.*, 134 Colo. 255, 302 P.2d 182 (1956).

■ It may be true, as claimants contend, that § 8–73–109(2) does not disqualify an applicant from receiving benefits for failing to cross a picket line where it is apparent that the employer has closed the job and no work is available beyond the picket line. *See F.R. Orr Construction Co., supra.* However, the evidence in these cases is sufficient to support the Commission's conclusion that claimants' unemployment was attributable to their refusal to cross the picket line rather than the unavailability of work.

Claimants rely on *Ancheta v. Daly*, 77 Wash.2d 255, 461 P.2d 531 (1969) for the proposition that the securing of the company tools constituted notice that the job was closed and no work was available to non-striking employees. However in *Ancheta* the court noted that many of the non-striking employees were told by their supervisors that the job was being closed. Furthermore, the non-striking unions actively opposed the strike in that case. These factors are not present here, and therefore, *Ancheta* is distinguishable.

II

■ In the case of the Intermountain claimants, the evidence is conflicting as to

whether work was available. The testimony of the vice president to the effect that he informed claimants' union that the jobs were open to anyone who wanted to work is sufficient to establish that work was available to claimants. *See Aarhaus v. Employment Security Department,* 23 Wash.App. 134, 594 P.2d 1370 (1979). Resolution of conflicts in the evidence and determination of the credibility of witnesses are matters properly left to the Commission. *McGinn v. Industrial Commission,* 31 Colo.App. 6, 496 P.2d 1080 (1972). Here, the Commission chose to believe the employer's witness, and that decision is not assailable on review.

▮ The two apprentice electricians contend that their cases are unique because their contracts required that they be supervised by a journeyman, and no journeymen crossed the picket lines. The Newberry apprentice made no effort to determine whether supervision was available, and the record is silent as to the availability of supervision. Thus, it was permissible for the Commission to infer that his unemployment was attributable to his refusal to cross the picket line rather than the absence of supervision. With respect to the Intermountain apprentice, the offer of employment by Intermountain's vice president to claimants' union is sufficient to create an inference that supervision was available. Plausible inferences which the Commission draws from substantial evidence may not be altered on review by this court. *McGinn v. Industrial Commission, supra.*

Orders affirmed.

PIERCE and SMITH, JJ., concur.