**William KRAFT et al., Petitioners,**

**v.**

**TEXAS EMPLOYMENT COMMISSION and the Shamrock Oil and Gas Corporation, Respondents.**

**No. B–136.**

Supreme Court of Texas.

July 26, 1967.

Rehearing Denied Oct. 4, 1967.

H. B. Porter, Dumas, Sam Houston Clinton, Jr., Austin, for petitioners.

Crawford C. Martin, Atty. Gen., J. H. Broadhurst, Asst. Atty. Gen., Austin, Underwood, Wilson, Sutton, Heare & Berry, W. M. Sutton, Amarillo, for respondents.

NORVELL, Justice.

The petitioners, William Kraft and forty-eight others, claim benefits under the Texas Unemployment Compensation Act. The primary question for decision is whether petitioners are disqualified from receiving such benefits under subsection (d) of section 3 of the Act, as amended in 1955, Article 5221b–3(d), Vernon's Ann.Tex. Stats.

Petitioners were employed by Shamrock Oil and Gas Corporation in 1964 and on August 9th of that year went on strike against the company's three plants. Thereafter, they offered to return to work but were told that the places formerly held by them had been filled and that no jobs were available.

Article 5221b–3(d) provides that:

"An individual shall be disqualified for benefits: * * *

"(d) For any benefit period with respect to which the Commission finds that his total or partial unemployment is (i) due to the claimant's stoppage of work because of a labor dispute at the factory, establishment, or other premises (including a vessel) at which he is or was last employed, or (ii) because of a labor dispute at another place, either within or without this State, which is owned or operated by the same employing unit which owns or operates the premises at which he is or was last employed, and supplies materials or services necessary to the continued and usual operation of the premises at which he is or was last employed; provided that this subsection shall not apply if it is shown to the satisfaction of the Commission that:

"(1) He is not participating in or financing or directly interested in the labor dispute; provided, however, that failure or refusal to cross a picket line or refusal for any reason during the continuance of such labor dispute to accept and perform his available and customary work at the factory, establishment, or other premises (including a vessel) where he is or was last employed shall be considered as participation and interest in the labor dispute; and * * *." (Exception (2) of the subsection is not pertinent to this cause.)

This subsection of the Unemployment Compensation Act was considered in Texas Employment Commission v. Hodson, 346 S.W.2d 665 (Tex.Civ.App., 1961, writ ref'd n.r.e.), wherein it appeared that Hodson joined a sheet metal workers' strike on April 2, 1959, and thereafter on September 25, 1959, he voluntarily crossed the picket line of his union and made an unconditional offer to go to work but was refused employment because the employer had already employed other workers to take the place of those who had gone on strike and there was no opening for him. The Court of Civil Appeals said:

"When appellee crossed his own picket line during the strike and was refused employment because there was no work available due to his job having been filled by another, his unemployment was no longer 'because of a labor dispute at the factory'; it was because there was no job for him. Resort to the escape clauses, subsection (d) (1) and (2) is not required, since the basic disqualification did not then exist. A new cause of involuntary unemployment had then displaced the original disqualifying cause."

In the present case, the trial court rendered judgment for petitioners which was reversed by a divided Court of Civil Appeals. 411 S.W.2d 624. The majority took the position that Hodson was distinguishable from the present case. In its opinion, it was said:

"There is nothing in that case (Hodson) to show that the appellee participated further in the union. It is stated in Subsection (d), Article 5221b–3: '[P]rovided that this subsection shall not apply if it is shown to the satisfaction of the Commission that: (1) He is not participating in or financing or directly interested in the labor dispute.' Appellees herein did not show to the satisfaction of the Commission that they were not participating in or directly interested in the labor dispute. Appellees crossed the picket line with the consent

of the union and were to report back to the union, and continued to take part in the picketing. We think the evidence clearly shows in this case that appellees were participating and directly interested in the labor dispute which still existed at the time of the trial in the district court."

The Chief Justice was of the opinion that the result reached by the majority was in direct conflict with Hodson and quoted the excerpt from the Hodson opinion which is set out above.

We think there is a well defined conflict between the majority opinion in this case and the opinion rendered in Hodson. The decision in this case is squarely bottomed upon the first exception or escape clause in subsection (d). The court stated that Kraft and his co-petitioners failed to show that they were not participating in or directly interested in a labor dispute. In Hodson it was clearly held that the escape clauses or exceptions of subsection (d) were not applicable since the basic disqualification did not exist as a "new cause of involuntary unemployment had then displaced the original disqualifying cause."

While Shamrock and the Employment Commission say that the present case may be distinguished from Hodson, the burden of their argument is that Hodson was incorrectly decided and was based upon authorities which properly had no application to the statute after it had been amended in 1955. In view of this vigorously urged contention, a more detailed statement of the facts in this case is deemed essential.

The Oil, Chemical and Atomic Workers International Union, AFL-CIO, was the recognized bargaining agent for the employees of Shamrock at its three plants. On August 6, 1964, the union called an economic strike because no agreement had been reached between Shamrock and the union as to wages and working conditions. Shamrock notified the union and its members that it would continue operations despite the strike and would proceed to secure

new employees upon a permanent basis to take the place of the strikers. From August 9th to October 5th, Shamrock hired approximately 212 new employees as permanent replacements. On October 5th, Shamrock also had in its employ some 83 workmen who either did not go on strike or had returned to work despite the strike. After October 5th, some 105 to 110 strikers were reinstated by Shamrock and all jobs or positions at the company plants were filled with one exception. In October, it was recognized as a practical matter that the strike had failed to gain the objectives sought by the striking workmen and the union granted permission to its members to cross the picket line and unconditionally agree to resume labor for the company. A semblance of a picket line was maintained thereafter, and the picket signs were changed from "strike" to "lockout." Between October 5th and October 19th, William Kraft and forty-eight others who had been employed by Shamrock prior to the strike, voluntarily crossed the union picket lines and made an unconditional offer to go to work for Shamrock. They were denied employment by the company on the ground that there were no jobs open as all available positions which could be held by petitioners had been filled by re-employed persons or new personnel hired since the commencement of the strike. On February 8, 1965, Shamrock sent its former employees a letter saying that they had been permanently replaced. Enclosed with the letter were any monies due from Shamrock, income tax W-2 forms and instructions for the withdrawal of retirement benefits on deposit with the company. Prior to this time, the company had ceased to pay premiums of the former employees' group insurance.

The parties stipulated at a hearing in December 1965 that the labor dispute commenced by the strike called in August of the preceding year was still in existence and that after petitioners had been refused employment by Shamrock, they (with certain exceptions) during the period extending from the week ending October 10, 1964 through June 19, 1965, met the eligibility requirements specified in the constitution of the international union for strike benefits by reporting for strike duty which was construed to mean participating in (lockout) picketing for at least eight hours per week, or in other activity relating to the labor dispute, including consumer boycott against Shamrock products.

Under the Hodson holding, when a workman crosses the union picket line and makes an unconditional offer to go to work and employment is refused because no job is available, this circumstance is considered the then cause of unemployment rather than the original stoppage of work by the workman or claimant because of a labor dispute. It is argued by respondents that this construction of the statute is wrong and that the facts of this case demonstrate the unsoundness of the Hodson decision.

Respondents argue that in 1955, the Legislature intended to effect a major change in the disqualification provisions of the Unemployment Compensation Act.

Prior to 1955, Article 5221b–3(d) contained the following disqualification provision:

"(d) For any benefit period with respect to unemployment which the Commission finds that his total or partial *unemployment is due to a stoppage of work* which *exists because of a labor dispute* at the factory * * * at which he is or was last employed * * *."

By Acts 1955, 54th Leg. Reg. Session, ch. 517, p. 1310, subsection (d) was amended so as to read as follows:

"(d) For any benefit period with respect to which the Commission finds that his total or partial unemployment is (i) *due to the claimant's stoppage of work because of a labor dispute* at the factory * * * at which he is or was last employed * * *."

The wording of the earlier statute is, "his total or partial unemployment is due to a

stoppage of work which existed because of a labor dispute * * *."

The 1955 amendment uses the words, "his total or partial unemployment is * * * due to the *claimant's* stoppage of work because of a labor dispute."

Respondents say that the old statute has reference to "stoppage of work at the plant," while the amended statute relates to the "claimant's stoppage of work", which means that if the individual workman stops work because of a labor dispute, he becomes disqualified regardless of whether the work at the plant stops or not.

It is argued that under the statute as it existed prior to 1955, the present claimants would not have been disqualified because there was no stoppage of work at the Shamrock plants, and that the Legislature intended to change the law and disqualify anyone from receiving unemployment benefits while he remained on strike and the plant or factory continued to *operate*. It is said that under a proper construction of the 1955 amendment, a workman's "stoppage of work" because of a strike, that is, joining in a strike, disqualified him from receiving unemployment compensation and that such disqualification was not removed by an employer's refusal to accept his unconditional offer to return to work because no work was available. Respondents contend that such disqualification could only be avoided by the workman's bringing himself within one of the exceptions or escape clauses of subsection (d).

We are not prepared to say that respondents' theory of construction of the statute is unreasonable or untenable. However, as stated in the forepart of this opinion, it is contrary to that reached by the Court of Civil Appeals in the Hodson case. We refused a writ of error in that case, no reversible error, and while by so doing, we did not necessarily approve all that was said in the opinion, Rule 483, we necessarily approved that court's construction of Article 5221b–3(d) and its holding

that when the workman crossed his own picket line during a strike and was refused employment because there was no work available, "a new cause of involuntary unemployment had then displaced the original disqualifying cause," i. e., the workman's stoppage of work because of a labor dispute.

We have again examined the Hodson decision in some detail. The construction placed upon the statute in that case is deemed clear, unambiguous and reasonable. The decision was rendered in 1961 and although the Legislature has convened at least three times since that time, it has not amended the subsection construed in *Hodson*. In the present case, as in *Hodson,* the basic disqualification no longer existed after claimants were refused work because no jobs were available, and there is no necessity to resort to the exceptions or escape clauses set forth in subsection (d).

The judgment of the Court of Civil Appeals is reversed and that of the trial court affirmed.