604 P.2d 1148

BUILDING PRODUCTS COMPANY an Arizona Corporation; and Del E. Webb Development Company an Arizona Corporation, Plaintiffs-Appellants,

v.

ARIZONA DEPARTMENT OF ECONOMIC SECURITY, an Agency of the State of Arizona, Construction Production & Maintenance Laborers' Local No. 383, AFL-CIO, an unincorporated labor organization; United Brotherhood of Carpenters' and Joiners of America and Local Union No. 906 and Local Union No. 1089, AFL-CIO, unincorporated labor organizations; International Union of Operating Engineers Local No. 428, AFL-CIO, an unincorporated labor organization; Oliver E. Reed; Edward L. Alcorn, Defendants-Appellees.

No. 1 CA-CIV 4245.

Court of Appeals of Arizona,
Division 1,
Department A.

Oct. 2, 1979.

Rehearing Denied Dec. 21, 1979.

Review Denied Jan. 15, 1980.

438

Snell & Wilmer by Frederick K. Steiner, Jr., Phoenix, for appellant Building Products Co.

Kaplan, Kaplan, Jacobowitz & Hendricks, P. A., by James P. Hendricks, Phoenix, for appellant Del E. Webb Development Co.

John A. LaSota, Jr., former Atty. Gen., Robert K. Corbin, Atty. Gen., by Frank Sagarino, Asst. Atty. Gen., Phoenix, for defendant-appellee Arizona Dept. of Economic Security.

Ward & Keenan, Ltd., by A. D. Ward, Phoenix, for defendants-appellees Laborers' 383 Operating Engineers' 428, Oliver E. Reed and Edward L. Alcorn, United Brotherhood of Carpenters and Joiners of America, Local Unions No. 906 and 1089, AFL–CIO.

McKendree & Lubin by John F. Sass, Stanley Lubin, Phoenix, for defendant-appellee United Brotherhood of Carpenters' and Joiners' of America, Local Unions No. 906 and 1089, AFL–CIO.

Minne & Sorenson by Richard Minne, Phoenix, for Cement Masons.

OPINION

WREN, Presiding Judge.

This consolidated appeal concerns the award of unemployment compensation to striking workers. The facts of both cases are similar and not in dispute. The Del E. Webb Development Company (Devco) had a collective bargaining agreement with a number of unions which expired on May 31, 1976. Similarly, Building Products Compa-

ny (B.P.C.) had a contract with Construction Production and Maintenance Laborers' Union, Local No. 383 which expired on July 8, 1976. Negotiations for new contracts were unsuccessful, so employees of each company who had been represented by the unions in the bargaining process ceased working and went on strike. The respective unions immediately established picket lines, which remained in existence beyond the date in which unemployment benefits were deemed available. While on strike the employees were notified by their employers (appellants) that the companies intended to continue to operate, and if they failed to return to work by a specified date they faced the prospect of becoming permanently replaced.[1] The appellants resumed operations on the announced dates and began hiring replacements for those employees who remained on strike. B.P.C. completed its replacement process within a week, while Devco took approximately a month to establish a full work complement. The employers also discontinued covering their striking workers under company financed health and welfare plans.

While still on strike the claimants applied for unemployment compensation benefits under the Employment Security Act (Act), A.R.S. § 23–601 et seq. These applications were denied and the right to benefits were suspended by a deputy of the Arizona Department of Economic Security (Department) on the ground that the claimants were disqualified from receiving benefits pursuant to A.R.S. § 23–777(A)[2] until such

1. Building Products letter dated August 13, 1976, in part:
   This is our notice to you that it is our intent to continue to operate our business. If you do not report for work at your regular starting time by Friday, August 20, 1976, we may replace you, as an economic striker, on a permanent basis.
   Devco telegram dated October 15, 1976, in part:
   As I am sure you must realize, a strike cannot go on forever. At some point the company and the union must reach an agreement or the company must resume operations without an agreement. It appears now that no agreement is possible within a reasonable time. Under these circumstances, the com-

pany has no alternative but to resume full operations without a union contract.
   Operations will resume on October 18, 1976. Please report at 8:00 a. m. at the construction yard at 99th and Union Hill Drive, Sun City. Please be advised that if you do not return to your job on that date, it may become necessary for the company to hire a permanent replacement for you. . . .

2. A.R.S. § 23–777(A)
   An individual shall be disqualified for benefits for any week with respect to which the commission finds that his total or partial unemployment *is due to a labor dispute, strike* or lockout which exists at the factory, establishment or other premises at which he

time as their unemployment was *no longer due to a labor dispute* (emphasis supplied). The determinations were subsequently modified by the Department's Director who ruled that the disqualification was removed upon the completion of hiring permanent replacements.[3]

The appellants filed an appeal in the superior court of Maricopa County pursuant to provisions of the Arizona Administrative Review Act, A.R.S. § 12–901 *et seq.* The separate causes were consolidated as they are here, because they involved the same questions of law. The superior court, without issuing findings of fact or conclusions of law, affirmed the Director's decisions.

We would first point out that neither side contends that the disputes were caused by the failure or refusal of the employer to conform to the provisions of any agreement or contract between the employer and employee, or any violation of the laws of this state or of the United States pertaining to hours, wages, or other conditions of work.[4] Nor is this court concerned with the merits of the labor controversy itself. Without question the strike continued beyond the dates the claimants were permanently replaced and they were participants therein. Finally, no issue has been taken with the director's conclusion that the claimants were disqualified from receiving benefits under A.R.S. § 23–777(A) until they were permanently replaced.

The narrow issue before this Court is whether, under the proper interpretation of A.R.S. § 23–777(A), the unemployment of striking workers *ceases to be due to a labor dispute on the date they are permanently replaced.* The question is one of first impression in our jurisdiction. Obviously whether the employees in this position should be compensated is a policy determination to be made by the legislature, and our research reflects that the legislatures of the various states are divided on the question. Consequently the function of this Court is to ascertain the legislative intent in enacting A.R.S. § 23–777(A), and to construe the statute to effect that purpose. *Arizona State Board of Accountancy v. Keebler,* 115 Ariz. 239, 564 P.2d 928 (App. 1977); *Members of Bd. of Ed. of Pearce U.H.S. Dist. v. Leslie,* 112 Ariz. 463, 543 P.2d 775 (1975); *State v. Allred,* 102 Ariz. 102, 425 P.2d 572 (1967); *City of Mesa v. Killingsworth,* 96 Ariz. 290, 394 P.2d 410 (1964); *Odle v. Shamrock Dairy of Phoenix, Inc.,* 7 Ariz.App., 515, 441 P.2d 550 (1968); See, A.R.S. § 1–211 A.

Appellants contend that A.R.S. § 23–777(A) disqualifies the striking workers from receiving the benefits provided by the act. The statute reads, in pertinent part, that an individual is disqualified from receiving benefits "for any week . . . *unemployment is due to a labor dispute, strike,* or lockout, which exists at the factory, establishment or other premises at which he is or was last employed." (Emphasis supplied.)

In *Brobston v. Employment Security Commission,* 94 Ariz. 371, 385 P.2d 239 (1963), the Supreme Court described the purpose of A.R.S. § 23–777 as follows:

> The Statute is designed to preserve the neutrality between an employer and his

is or was last employed. This provision shall not apply if it is shown to the satisfaction of the commission that the individual is not participating in, financing or directly interested in the labor dispute, strike or lockout or that he does not belong to a grade or class of workers of which, immediately before the commencement of the labor dispute, strike or lockout, there were members employed at the premises at which the labor dispute, strike or lockout occurs, any of whom are participating in or financing or directly interested in the dispute, strike or lockout. In the case of separate branches of work commonly conducted as separate businesses in separate premises, each department shall, for the purposes of this section, be deemed to be a separate factory, establishment or other premises. (Emphasis supplied.)

3. In the B.P.C. case, the director sustained the disqualifications from August 8, 1976 (the first benefit week involved in the dispute) to August 27, 1976. (Completion of replacement hiring.) In the Devco case, the Director sustained the disqualifications from September 26, 1976 through November 13, 1976. (Establishment of a full work complement.)

4. See A.R.S. § 23–777(B).

employees by withdrawing, irrespective of individual needs, benefits under the circumstances enumerated. Palpably, the intent of the legislature is that the state shall stand aside in order that a labor dispute may not be financed through unemployment compensation.

94 Ariz. at 373, 374, 385 P.2d at 241.

Appellants specifically argue that the original cause of the claimants' unemployment was due to a labor dispute or strike, and consequently the payment of unemployment compensation to striking workers violated both the letter and spirit of the aforementioned law. The Director reasoned, by applying Department Benefit Policy Rule A.C.R.R. R6–3–56445(B) (Rule),[5] that in permanently replacing striking workers, eliminating employee benefits and resuming production, the cause of the employees' unemployment was no longer due to the labor dispute, but rather was due to the affirmative acts of their employer.

Appellants assert that the case of *Sakrison v. Pierce*, 66 Ariz. 162, 185 P.2d 528 (1947), which involved A.R.S. § 23–777(A) (then A.C.A. § 56–1005(d)),[6] and the legislature's subsequent amendment of that section in 1952 to language which is virtually identical to our present statute, is dispositive of the issue. In that case the Supreme Court held that the "stoppage of work" language made the disqualification section depend upon the shut-down of operations at the employer's premises. The court concluded that once normal operations resumed the disqualification section was without further force or effect. The court went on to say that had the language of the statute been similar to the present language the disqualification would not have been dependent upon the cessation of operations at the employer's establishment, but rather upon the existence of an active or continuing labor dispute. In 1952 our legislature amended A.R.S. § 23–777(A) (then A.C.A. § 56–1005(d)) by deleting the "stoppage of work" language and inserting "due to a labor dispute, strike . . .", Laws 1952, Chapter 122, § 3. Appellants contend that since the legislature is presumed to be aware of court decisions construing the language of a statute, *State v. Jones*, 94 Ariz. 334, 385 P.2d 213 (1963); *State v. Govorko*, 23 Ariz.App. 380, 533 P.2d 688 (1975), a statutory amendment is presumed to change existing law. *Trump v. Badet*, 84 Ariz. 319, 327 P.2d 1001 (1958); *Needel v. Needel*, 15 Ariz.App. 471, 489 P.2d 729 (1971). They thus conclude that because of the change in statutory language, the disqualification of strikers under A.R.S. § 23–777(A) cannot turn on the resumption of production through the use of replacement employees.

While we agree with appellants' argument that the legislature intended to

---

**5.** Department Benefit Policy Rule A.C.R.R. R6–3–56445(B)

    B. Discharge or replacement of workers (Labor Dispute 445.2)

    1. Certain actions by an employer during the course of a labor dispute may be recognized as a discharge from employment with a resultant severing of the employer-employee relationship. A worker by his action may sever the employer-employee relationship. (See R6–3–56175 of these rules.)

    2. When an employer takes positive and affirmative action to discharge a worker, the unemployment ceases to be due to a labor dispute and should be recognized as due to another cause. However, discharge actions by employers during labor disputes must be carefully examined as they are often part of the strike strategy.

    3. Positive action such as posting a notice or mailing a letter stating that certain employees are discharged should not of itself be considered as severing the employer-employee relationship. However, when coupled with other affirmative action it may constitute a discharge. Such other affirmative action could be:

    a. Replacing the discharged employees, or
    b. Eliminating employees benefits, or
    c. Resumption of production, or
    d. Transfer of the employer's location, or
    e. Sale of the business, or
    f. Correspondence or communication with the affected employees. . . .

**6.** "(d) For any week with respect to which the commission finds that his total or partial unemployment is due to a *stoppage of work* which exists because of a labor dispute, strike or lock-out at the factory, establishment, or other premises at which he is or was last employed. * * *" (Emphasis added.)

change existing law by adopting the 1952 amendment, we decline to give the change as broad a reading as appellants would like. Without question the 1952 amendment changed the focus of the disqualification provision from the shutdown of operations to the showing of the continuing existence of a labor dispute. Therefore, the Director erred, as a matter of law, in using resumption of production (A.C.R.R. R6–3–56445(B)(3)(c)) as a factor in his determinations, because the Department cannot adopt a rule which goes beyond the standards, limitations and policies set by the statute that granted its rule making power. *Arizona Power Co. v. Stuart*, 212 F.2d 535 (9th Cir. 1954); *Hernandez v. Frohmiller*, 68 Ariz. 242, 204 P.2d 854 (1949).

We agree that the hiring of temporary replacements is a foreseeable consequence of resuming production and could not be used as a factor, nor was it used in the present case, to determine the validity of the disqualification action. However, neither the *Sakrison* case, nor any other case in this jurisdiction has addressed the issue of what acts, if any, can remove the disqualification. Therefore we proceed with our analysis to determine whether permanent replacement and loss of company benefits are sufficient to remove the disqualification under A.R.S. § 23–777(A).

In examining the numerous cases from other jurisdictions which have confronted this issue under substantially similar statutory language, it is evident that all are in agreement that certain affirmative acts by the employer or employee can change the cause of unemployment. However, the decisions are almost evenly divided over the issue of whether permanent replacement and loss of company benefits are in themselves sufficient acts. After considerable deliberation and reflection we find ourselves in accord with the line of cases which hold that the acts before this Court are insufficient to remove the disqualification. *Sarvis v. High Point Sprinkler Company and Employment Security Commission of North Carolina*, 296 N.C. 475, 251 S.E.2d 434 (1979); *Colee v. Employment Division*, 25 Or.App. 39, 548 P.2d 167 (1976); *Bailey v.*

*Tennessee Department of Employment Security*, 212 Tenn. 422, 370 S.W.2d 492 (1963); *Kraft v. Texas Employment Commission*, 418 S.W.2d 482 (1967); see generally *Rice Lake Creamery Co. v. Industrial Commission*, 15 Wis.2d 177, 112 N.W.2d 202 (1962); *Johnson v. Wilson & Co.*, 266 Minn. 500, 124 N.W.2d 496 (1963). These cases hold that in order to remove the labor dispute disqualification, a striking worker must not only prove that he has been permanently replaced, but also that he has (1) unilaterally abandoned the strike or dispute and (2) unconditionally offered to return to work. We believe the results and reasonings of those cases are in accord with the concerns which prompted our own legislature to enact our presently worded labor dispute disqualification statute.

As noted earlier, the legislature's intent in enacting A.R.S. § 23–777(A) was to maintain state neutrality in certain continuing labor controversies. In this case, the claimants left work because of a strike, and it is undisputed that the strike continued well beyond the dates on which the claimants were permanently replaced. It is also clear that, with two possible exceptions in the B.P.C. case, none of the claimants abandoned the strike or unconditionally offered to return to work.

We cannot agree with the cases which have held that permanent replacement and loss of benefits are sufficient intervening acts to alter the original cause of unemployment. To do so would fly in the face of the literal language and purpose of A.R.S. § 23–777(A).

In order to remove the disqualification imposed under A.R.S. § 23–777(A) during the continuance of a labor dispute, strike, or lockout, the employee who has been permanently replaced must further show that: (1) he abandoned the labor dispute and (2) unconditionally offered to return to work.

We agree with the court's reasoning in *Sarvis*, that the application of the above rule:

[D]oes no violence to the legislative intent when it recognizes that an employer's inability to reinstate previously replaced employees after they abandon their strike and unconditionally offer to return to work changes the cause of unemployment so as to lift the disqualification of employees for benefits.

We therefore hold that the superior court erred as a matter of law, in affirming the director's award of unemployment benefits, and in subsequently charging the employers' accounts for benefits paid thereafter.[7] Accordingly, the application of A.C. C.R.: R6–3–56445(B) in the present controversy is invalid as applied because it exceeds the standards and policies set forth by the statute. Since it is unclear whether the two employees, in the B.P.C. case, complied with these requirements a further determination will need to be made on remand in their respective cases. Other issues presented for our determination are not necessary to the resolution of this controversy and we therefore decline to pass on them at this time.

The judgment entered by the superior court, insofar as it conflicts with this opinion, is reversed. The case is remanded for further proceedings consistent with this opinion.

DONOFRIO and HAIRE, JJ., concur.

---

7. A.R.S. § 23–777(C)

Benefits paid to an individual as a result of total or partial unemployment due to a labor dispute, strike or lockout shall not be used as a factor in determining the contribution rate of employers of such individual prior to the commencement of the labor dispute, strike or lockout.