Cheryl BAUGHMAN, et al.,
Plaintiffs-Appellants,

v.

JARL EXTRUSIONS, INC., a New York
corporation in the State of Tennessee in
Carter County, Tennessee, et al., De-
fendants-Appellees.

Court of Appeals of Tennessee,
Eastern Section.

Dec. 30, 1982.

Permission to Appeal Denied by
Supreme Court April 4, 1983.

William O. Shults of Campbell, Hooper &
Shults, Newport, for plaintiffs-appellants.

Frank J. Scanlon, Sr. Asst. Atty. Gen.,
Nashville, for defendants-appellees; Wil-
liam M. Leech, Jr., Atty. Gen., Nashville, of
counsel.

OPINION

FRANKS, Judge.

Twenty-two claimants denied unemploy-
ment compensation benefits by the commis-
sioner appeal the denial which has been
sustained by the Board of Review and the
trial judge.[1]

Our review is limited to questions of law
and determining whether there is material
evidence to support the factual determina-
tions of the Board of Review. T.C.A.,
§ 50–1325(I). We reverse for reasons here-
inafter discussed and remand for entry of

---

1. The case was remanded to the Board of Re-
view to consider whether benefits should be
awarded after Jarl, as a consideration in set-
tling another suit, agreed to drop opposition to
unemployment benefits for these claimants.
The board reaffirmed its prior decision.

an order directing the commissioner to authorize unemployment benefits in accordance with the Employment Security Law.

The facts found by the board pertinent to our conclusions are virtually undisputed. We quote part of the board's findings of fact:

On June 6, 1979, the production and maintenance workers of Jarl Extrusions, Inc., Elizabethton, Tennessee, commenced an economic strike. Picket lines were formed. Negotiations with the union representatives to settle the strike issues were attempted.

On July 31, Jarl sent a letter to all striking employees advising them that negotiations for settlement had not been fruitful and that there was no hope for an early settlement of the issues. The letter advised that Jarl intended to commence production again on August 6, and that they (Jarl) would like to operate with their regular employees and their jobs were available to them on August 6; that if they did not report for work on that date, "the company must use every legal means to permanently replace those strikers who do not come back to work". A few of the striking employees returned to work in response to the letter, but the large majority remained on strike.

The board further found a strike was in progress until January 11, 1980, when a settlement of the strike issues was reached, and further determined all striking employees were made subject to an injunction in circuit court on August 10, 1979, enjoining them from mass picketing and from being within 500 yards of the company property, except for duly authorized pickets who were limited to four in number, and that the appellants had violated the injunction by mass picketing and other acts.

At the conclusion of the strike, Jarl refused to rehire any of the striking employees as all positions required for production had been filled. When the striking employees applied for unemployment compensation benefits in January, 1980, the employer advised the unemployment office that none was entitled to benefits before or after January 11, 1980, because they voluntarily quit their employment by not returning to their jobs on August 6, in response to the letter of July 31, and were, in effect, separated for cause. As to the appealing claimants, the employer by its attorney filed hand written responses to the unemployment claims, asserting these employees were discharged "for illegally blocking the entrance to the plant in violation of a court order" or other "strike misconduct" under T.C.A., § 50–1324 B.

■ The board determined these claimants "were present in conjunction with mass picketing on August 20 or August 21, 1980, in violation of the ... restraining order", and concluded that the strikers were disqualified for benefits due to misconduct under T.C.A., § 50–1324 B(2), which provides an individual shall be disqualified for benefits: "If the commissioner finds that an individual has been discharged for misconduct connected with his work ...". Material evidence supports this factual determination as to these claimants; however, we conclude the alleged misconduct subsequent to August 6, 1979, was not connected with their work within the meaning of T.C.A., § 50–1324.

The pertinent provisions of the letter referred to in the board's findings of fact from the employer to the employees dated July 31, 1979, are:

The Company had no alternative but to make the decision to re-start its production and maintenance program as of August 6, 1979. We prefer to operate our plant with our regular employees and their jobs are available to them effective August 6. It is not our desire to do so, but the Company must use every legal means to permanently replace those strikers who do not return to work. We sincerely hope you will decide to protect your job by returning to work on August 6, *at 8:30 A.M.*

The letter was signed by the company's vice-president and general manager.

■ The evidence is undisputed that the employees who refused to return to work were replaced and where striking employees are permanently replaced the relationship of employer and employee is severed. *Totorica v. Western Equipment Co.,* 88 Idaho 534, 401 P.2d 817 (1965); *Ruberoid Co. v. California Unemployment Ins. App. Bd.,* 59 Cal.2d 73, 27 Cal.Rptr. 878, 378 P.2d 102 (1963);[2] *Pierce v. Industrial Commission,* 38 Colo.App. 85, 553 P.2d 402 (1976); *Jackson v. Review Board of Indiana Employ. Sec. Div.,* 138 Ind.App. 528, 215 N.E.2d 355 (1966); *Sprague & Henwood, Inc. v. Unemployment Compensation B. of R.,* 207 Pa.Super.Ct. 112, 215 A.2d 269 (1965). *Also see* cases collated at 63 A.L.R.3d 88, § 30[b]. Under Tennessee law, the relationship of the employer-employee is not a prerequisite to the existence of a labor dispute and the application of the disqualification provision of the Unemployment Security Act relative to a labor dispute in active progress. *Milne Chair Co. v. Hake,* 190 Tenn. 395, 230 S.W.2d 393 (1950). *Cf.* The National Labor Relations Act, whereunder a permanently replaced striker continues to be an employee within the meaning of that Act, subject to reinstatement by the board. 29 U.S.C.A., § 152(3) (1970); *Washington Post Co. v. Dist. Unemp. Comp. Bd.,* 379 A.2d 694 (D.C.App.1977).

We do not reach the issue of whether the conduct of the strikers subsequent to their termination would be grounds for disqualification since the misconduct was not connected with their work, their employment having been terminated by the employer prior to the alleged incidents.

Whether the permanent replacement of the striking employees changes the cause of striking employees' unemployment under unemployment statutes has sharply divided

the courts. *See Building Products v. Arizona Dept. of Employment Security,* 124 Ariz. 437, 604 P.2d 1148 (App.1979) Under Tennessee decisions, the factual determinations of the board supported by material evidence control on this issue. In *Milne Chair Co., supra,* termination and permanent replacement of the employees was held to be the cause of unemployment rather than a continuing labor dispute, whereas in *Bailey v. Dept. Emp. Security,* 212 Tenn. 422, 370 S.W.2d 492 (1963), the commissioner was upheld upon determining the labor dispute and not the discharge notices to the employees was the cause of the employees' unemployment for the duration of the labor dispute.

■ In the instant case, the record supports the board's determination that claimants were disqualified for benefits to January 11, 1980, due to a labor dispute. Thereafter, the claimants unconditionally offered to return to work and became entitled to benefits as a matter of law where their jobs had been filled by others. *Special Products Co. v. Jennings,* 209 Tenn. 316, 353 S.W.2d 561 (1961).

The case is remanded to the trial court for the entry of an appropriate judgment in accordance with this opinion, with costs assessed to appellees.

PARROTT, P.J., and GODDARD, J., concur.

GODDARD, Judge, concurring.

I concur in the majority opinion, but foresee that the rule mandated by the Statute could produce untoward results in some cases. For example, suppose that in a case similar to the one at bar, the striking employees, who had been terminated and re-

---

**2.** The letter sent to the striking employees in *Ruberoid Co.,* is of the same import. That letter read:

At the present time there is no indication when the strike called by the International Chemical Workers Union, Local No. 1, at the Company's Long Beach plant, will end. The

Company has, therefore, decided to resume operations as soon as possible.

If you return to work on or before October 7, 1958, you will find a job available for you. Unless you report available for work by October 7, 1958, however, you will be permanently replaced. 378 P.2d at 103–4, *n.* 1.

placed, assault [1] or even murder supervisory or replacement employees as they attempt to enter the plant. Under our holding today they would not be denied unemployment benefits. I believe the rule should be that any acts directed toward the employer, his employees, or his property which would constitute misconduct justifying termination without unemployment benefits should also preclude recovery by a terminated employee. However, I recognize this is a matter that addresses itself to the Legislature; hence, my concurrence.

---

1. In the case at bar the automobile of the plant manager was damaged by rocks thrown by unidentified individuals who were congregated at the plant gate. The windshield of a car being driven by a vice-president of Jarl, who was general manager of the plant, was broken by a brick thrown from a car registered in the name of a striking employee. An employee who chose to return to work had his car struck by rocks and by a two-by-four and was shot at by striking employees.