553 P.2d 402 (1976)
Ronald F. PIERCE et al., Petitioners,
v.
INDUSTRIAL COMMISSION of the State of Colorado (Ex-Officio Unemployment Compensation Commission of Colorado) and Trans-Western Express, Ltd., Respondents.
Nos. 75-636 through 75-643, 75-672 and 75-883.
Colorado Court of Appeals, Div. III.
July 1, 1976.
*403 Criswell, Patterson & Ballantine, John N. McNamara, Jr., Englewood, for petitioners.
J. D. MacFarlane, Atty. Gen., Jean E. Dubofsky, Deputy Atty. Gen., Edward G. Donovan, John Kezer, Louis L. Kelley, Asst. Attys. Gen., Denver, for respondent Industrial Commission of the State of Colorado (Ex-Officio Unemployment Compensation Commission of Colorado).
Jones, Meiklejohn, Kehl & Lyons, Edward T. Lyons, Jr., Denver, for respondent Trans-Western Express, Ltd.
Selected for Official Publication.
*404 BERMAN, Judge.
The unemployment compensation claimants to this consolidated appeal seek to set aside the final orders of the Industrial Commission in their respective cases. We affirm.
Claimants are former employees of respondent Trans-Western Express, Ltd. (TWX). On October 4, 1973, the local union, to which all claimants belonged, struck TWX. During the first week of the strike, TWX wrote claimants informing them that it intended to continue its operations, and inviting claimants to return to their jobs or face the possibility of being permanently replaced. Claimants declined to return to their jobs and actively participated in the strike by picketing or withholding their services, or both. On April 5, 1974, picketing at TWX was permanently enjoined by court order. Two claimants had started work with new employers prior to that date while the other claimants procured employment afterwards. All continued working for the new employers for varying periods until they were ultimately laid off for lack of work. Then claimants filed for unemployment compensation benefits.
The Industrial Commission, affirming the referees' decisions, denied claimants' benefits, pursuant to § 8-73-109, C.R.S. 1973, for the period of their active participation in the strike (October 4, 1973, to April 6, 1974). Claimants do not challenge that portion of the Commission's order. In addition, however, the Commission found that, after picketing at TWX was permanently enjoined, claimants had "voluntarily quit" their jobs with TWX "for personal reasons," and thus, pursuant to § 8-73-108(6) (v), C.R.S.1973, it disqualified them from benefits for a period of thirteen weeks. It is this portion of the Commission's order that claimants seek to overturn.

I.
In determining the amount of unemployment benefits payable, the Commission is required to examine the circumstances surrounding "a separation from work occurring at any time from the beginning of the base period to the date of filing a claim . . . ." Section 8-73-108(2) (b)(I), C.R.S.1973. (Emphasis added) Here, claimants' base period includes the period of time during which they struck, and later ceased working for, TWX. Thus, the Commission must consider the direct cause, see Ruberoid Co. v. California Unemployment Insurance Appeals Board, 59 Cal.2d 73, 27 Cal.Rptr. 878, 378 P.2d 102, of claimants' separation from TWX.
First, we note that § 8-73-109, C.R.S.1973, is not relevant to this determination. Section 109 excludes coverage for any week of unemployment caused by a strike or labor dispute. See 1B CCH Unemployment Insurance Rep. ¶ 1980 (1975). During the existence of a labor dispute, the employer-employee relationship is merely suspended. Sandoval v. Industrial Commission, 110 Colo. 108, 130 P.2d 930. However, the relationship may be terminated if the employer permanently replaces the striking employee. Ruberoid Co. v. California Unemployment Insurance Appeals Board, supra; Jackson v. Review Board of Indiana Employment Security Division, 138 Ind.App. 528, 215 N.E.2d 355; Totorica v. Western Equipment Co., 88 Idaho 534, 401 P.2d 817; Annot., 63 A. L.R.3d 88 at 208. It may also terminate if the striking employee accepts a permanent position with another employer with the intent not to return to his prior job when the labor dispute is concluded. Mark Hopkins, Inc. v. California Employment Commission, 24 Cal.2d 744, 151 P.2d 229; In Re Hatch, 130 Vt. 248, 290 A.2d 180, 61 A.L.R.3d 756; Inter-Island Resorts, Ltd. v. Akahane, 46 Hawa. 140, 377 P.2d 715. When the employer-employee relationship has been terminated, section 109 no longer applies. Therefore, the referee's finding that the labor dispute with TWX still existed on the date claimants filed for benefits, *405 and claimants' objection to that finding, are irrelevant.
Furthermore, although the labor dispute may have been the indirect cause of the termination, see Ruberoid Co. v. California Unemployment Insurance Appeals Board, supra; Kraft v. Texas Employment Commission, 418 S.W.2d 482 (Tex.), it cannot be considered the direct cause of the termination. If it were so considered, the exclusion provided for in section 109 would apply regardless of whether the striking employee was replaced or quit, and such an approach would violate the underlying policy of the Employment Security Act, that persons "unemployed through no fault of their own" should receive benefits. Section 8-70-102, C.R.S.1973; Sandoval v. Industrial Commission, supra. That is, when a striking employee is permanently replaced, and his employment thereby terminated, he is unemployed through no fault of his own and, if otherwise eligible, should receive benefits.

II.
Here, it is undisputed that the employer-employee relationship between claimants and TWX was terminated. The Commission adopted the referees' findings that claimants ceased to participate in the labor dispute when picketing was enjoined on April 5, that claimants sought employment elsewhere, and that claimants could have returned to their jobs with TWX at that time. Although TWX had informed claimants that it intended to continue operations and would hire replacements, the letter also stated claimants could return at any time until a replacement had been hired. The president of TWX testified that, on the date picketing was enjoined, he had not permanently replaced all striking employees and that TWX was operating at 50% of normal capacity. He further testified that none of the claimants made an unqualified offer to return to work at any time prior to their taking new employment.
Claimants testified that they would not work for TWX until a union contract had been signed. One claimant testified that he faced expulsion from the union had he not honored the strike, even after picketing had been enjoined. Another testified he did not return to work for TWX because he "wanted to get another union job to protect my rights and my benefits." Other claimants expressed this same concern about losing their union benefits. All sought, and obtained, other employment; none attempted to return to TWX during the interim period between the injunction and subsequent jobs with different employers. Thus, the Commission's finding that claimants voluntarily quit for personal reasons is supported by substantial evidence and is binding on review. Stensvad v. Industrial Commission, 167 Colo. 140, 445 P. 2d 898; Burak v. American Smelting & Refining Co., 134 Colo. 255, 302 P.2d 182.

III.
Claimants contend the Commission's decision disqualifying them for 13 weeks of benefits "punishes" them, regarding their claims for subsequent benefits, for previously exercising their federally guaranteed right to strike. See 29 U.S.C. §§ 157 and 163. Although citing no authority to support their contention, claimants argue that the disqualification violates the Supremacy Clause, U.S.Const., Art. VI, and is unconstitutional. This contention is without merit.
The disqualification resulted from termination of the employer-employee relationship, and not from the fact that claimants had suspended that relationship by their involvement in a labor dispute or strike. Claimants, even after the picketing was enjoined, could have still refused to work for TWX until their labor demands were met. It was claimants' decision to terminate permanently their employer-employee relationship with TWX by accepting full time employment *406 elsewhere that gave rise to the disqualification. Thus, the disqualification in no way infringes upon claimants' right to strike. See N.L.R.B. v. Fansteel Metallurgical Corp., 306 U.S. 240, 59 S.Ct. 490, 83 L.Ed. 627.

IV.
Claimant Vigil has raised an additional issue. He contends that in his case TWX failed to appeal the deputy's decision to the referee in a timely manner and therefore TWX has lost the right to review by this court. We have examined the record and find this contention to be without merit.
The orders of the Industrial Commission are affirmed.
PIERCE and SMITH, JJ., concur.