In the Matter of the Claim of Allen W. KRANTZ, Kevin E. Hawkins, Mark W. Williams, Kenneth J. Skalla and Albert E. Britton, Jr., Petitioners,

v.

KELRAN CONSTRUCTORS, INC., The Industrial Commission of the State of Colorado (Ex-Officio Unemployment Compensation Commission of Colorado), and Director, Department of Labor and Employment, Division of Employment and Training, Respondents.

No. 83CA0115.

Colorado Court of Appeals, Div. II.

July 28, 1983.

Butler, Landrum, Pierce & Turner, P.C., Robert W. Turner, Lakewood, for petitioners.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Joel W. Cantrick, Sol. Gen., William Levis, Asst. Atty. Gen., Denver, for respondents.

SMITH, Judge.

Claimants seek review of a final order of the Industrial Commission denying their claims for unemployment compensation. They contend that the Commission erred in

finding that their unemployment was due to a labor dispute. *See* § 8–73–109(1), C.R. S.1973. We affirm the order.

Claimants were members of Local 9 of the International Union of Operating Engineers (IUOE). They were employed by Kelran Constructors, Inc., (employer) and were working under a collective bargaining agreement negotiated by the IUOE. The agreement expired May 3, 1982, and the union commenced a strike against the employer. Claimants participated in the strike by manning picket lines.

On May 5, 1982, the employer sent a letter to the strikers stating that work was available and they could return to work. However, the employer expressed its intent to continue operations by hiring replacements. The letter warned that claimants would lose their jobs unless they returned to work before a replacement was hired.

Despite the letter, claimants did not go back to work. Their reluctance was motivated by fear of the loss of union benefits including health insurance, pension, and vacation time.

The negotiations between the IUOE and the employer failed to produce an agreement and the picket lines were removed on May 17. The employer apparently hired some replacements and continued "limited" operations. However, claimants were not formally terminated, and the employer's witness testified that the labor dispute was still in progress at the time of the hearing (July 27, 1982). He further testified that jobs were available for claimants and they could still return to work. The witness stated that the employer would provide benefits comparable to claimants' union benefits.

The referee found that claimants were disqualified from receiving benefits between May 3 and May 17 because their unemployment was due to a strike or a labor dispute. Section 8–73–109(1). However, he concluded that the strike ended when the pickets were removed, and held that claimants were thereafter qualified for benefits.

The Commission reversed the referee, holding that a labor dispute existed between claimants and the employer, and the dispute had not terminated at the time of the hearing. The Commission found that the employer's May 5 letter did not discharge claimants, and that claimants did not terminate their employment by seeking work elsewhere. Consequently, the Commission denied benefits from May 3 until "a claimant shows that his labor dispute with this employer has ended."

Claimants contend that the Commission's decision is erroneous as a matter of law because the employer terminated them when it hired replacements. Under these circumstances, claimants argue that their unemployment was no longer "due to a strike or labor dispute" within the meaning of § 8–73–109(1).

In *Pierce v. Industrial Commission,* 38 Colo.App. 85, 553 P.2d 402 (1976), we stated that a strike or labor dispute suspends the employer-employee relationship, and § 8–73–109 excludes coverage for periods of unemployment attributable to the dispute. However, the relationship may be terminated and the employee become eligible for benefits "if the employer permanently replaces the striking employee." *Pierce v. Industrial Commission, supra.* The rationale for this rule is that hiring permanent replacements ends the voluntary nature of the unemployment and breaks the chain of causation between the labor dispute and the unemployment. *Ruberoid Co. v. Unemployment Insurance Appeals Board,* 59 Cal.2d 73, 27 Cal.Rptr. 878, 378 P.2d 102 (1963).

Here, there was a factual dispute as to whether or not the employer had permanently replaced the claimants. Although the May 5 letter threatened such action, the employer's witness stated that claimants' jobs were still available. Furthermore, the claimants admitted that a labor dispute still existed between the union and the employer.

█ Resolution of conflicts in the evidence is a matter properly left to the Commission. *McGinn v. Industrial Commission,* 31 Colo.App. 6, 496 P.2d 1080 (1972). Be-

cause there was evidence supporting the conclusion that claimants were not permanently replaced, and that the labor dispute was ongoing, the Commission's decision may not be disturbed on appeal. Section 8–74–107(6)(c), C.R.S.1973 (1982 Cum. Supp.); *cf. Isobe v. Unemployment Insurance Appeals Board,* 12 Cal.3d 584, 116 Cal. Rptr. 376, 526 P.2d 528 (1974).

Orders affirmed.

PIERCE and STERNBERG, JJ., concur.