BRANNAN SAND & GRAVEL
CO., Petitioner,

v.

The INDUSTRIAL CLAIM APPEALS
OFFICE OF the STATE OF COLORA-
DO and the Division of Employment
and Training for the Colorado Depart-
ment of Labor and Employment; Ma-
nuel Federico; Ronald E. Baird; Dean
A. Cummings; Richard L. Goodnight;
James A. Hall; Lee Higginbotham;
Larry H. Hubler; Gale L. Donnelly; El-
ery H. Mefford; Donald K. Mefford;
John A. Lauro; Pedro C. Leal; Floyd J.
Mansfield; Theodore Jimenez; Leon-
ard H. Johnson; Richard W. Lanter;
Orson J. Matteson; Dorlin M. Thomp-
son; Barry J. Todd; Harvey A.
Williams; Jose E. Romo; Robert L.
Saul; Joseph H. Marcus; Larry E.
Owen; Ronald L. Owen; Rudolph L.
Palomino; David Scheibley; Louis
Siefford; George S. Sims; Ronald W.
Stockley; and Eugene Romero, Respon-
dents.

Nos. 87CA0907 to 87CA0909, 87CA0911 to
87CA0915, 87CA0917 to 87CA0920,
87CA0921 to 87CA0936, 87CA0938, and
87CA0940 to 87CA0942.

Colorado Court of Appeals,
Div. IV.

Sept. 15, 1988.

Bradley, Campbell & Carney, P.C., Earl K. Madsen, K. Preston Oade, Jr., Golden, for petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Robert C. Lehnert, Asst. Atty. Gen., Denver, for Indus. Claim Appeals Office.

Hornbein, MacDonald, and Fattor, P.C., Susan J. Tyburski, Denver, for respondents Federico, Cummings, Goodnight, Hall, Higginbotham, Hubler, Donnelly, Mefford, Mefford, Lauro, Mansfield, Jimenez, Johnson, Matteson, Thompson, Todd, Williams, Romo, Saul, Marcus, Owen, Palomino, Scheibley, Seifford, Sims, Stockley, and Romero.

Fogel, Keating and Wagner, P.C., Scott A. Meiklejohn, Denver, for respondent Richard W. Lanter.

Pedro C. Leal, pro se.

No appearance for respondents Ronald E. Baird and Ronald L. Owen.

BABCOCK, Judge.

In this consolidated proceeding, Brannan Sand & Gravel, Co., employer, seeks review of those portions of the final orders of the Industrial Claim Appeals Office (Panel) that awarded unemployment compensation benefits to the claimants. We set aside the orders and remand for reconsideration.

The hearing officer found the following facts common to these claims. Claimants, members of the teamsters union, worked for employer under a collective bargaining agreement that expired June 30, 1985. The union commenced a strike July 3, 1985, after efforts to negotiate a new agreement were unsuccessful. Claimants stopped working because of the strike.

Employer sent a letter dated July 3, 1985, to each striking employee stating that it intended "to resume and continue our operations in spite of the strike," that for those who wished to return for work, "employment is available," and that if an employee chose "not to return to work, it will be necessary to seek a permanent replacement for you." The letter further stated that "if such a replacement is hired before you make an unconditional offer to return to work, you will not have a job with us at that time." Claimants continued striking and refused to cross the picket line.

On July 8, 1985, employer began advertising for replacements. Applicants were interviewed and employer hired enough workers for the work that was available. The replacements were assigned to trucks which normally had been assigned to specific strikers. Employer continued to hire workers to meet workload demands in the following months. Although it could provide jobs for some strikers, it conceded that it could not provide jobs for all. Some strikers returned to work and others offered to return to work, but were offered reemployment only when other vacancies occurred.

The hearing officer found that claimants participated in the strike by refusing to cross the picket line and that they were directly interested in the strike as members of the class of workers conducting the

strike. The hearing officer further found that employer's July 3, 1985, letter threatened permanent replacement and that other workers were driving the trucks normally assigned to claimants. However, because employer's witnesses testified that jobs and vehicles were still available, and other strikers had returned to work, the hearing officer found that employer had not formally terminated claimants.

The hearing officer ruled that "a labor dispute is ended by the claimant through resumption of work with his employer, or by permanently going to work with another employer, or by being discharged by this employer." Because employer had not formally terminated claimants, the hearing officer concluded that each claimant was involved in an ongoing labor dispute and, therefore, was ineligible for benefits from July 3, 1985, until each claimant returned to work with employer and again separated from work with employer for reasons giving rise to benefit eligibility.

The Panel affirmed the hearing officer's finding of fact that claimants were unemployed from July 3, 1985, to July 20, 1985, because of a strike. However, the Panel set aside the hearing officer's finding that claimants were unemployed because of a strike after July 20, 1985. To the contrary, it found from the record that by July 20, 1985, employer had permanently replaced claimants, and that by doing so, employer terminated the employment relationship which had been merely suspended by the strike.

Citing *Pierce v. Industrial Commission*, 38 Colo.App. 85, 553 P.2d 402 (1976) and *In re Claim of Krantz v. Kelran Constructors, Inc.*, 669 P.2d 1049 (Colo.App.1983), the Panel concluded that claimants were unemployed because they had been permanently replaced, and therefore, continuance of the labor dispute was irrelevant to the determination of claimants' eligibility for unemployment benefits. Finding that claimants were permanently replaced for the convenience of the employer, the Panel concluded claimants were not at fault for their post-July 20 separation.

The Panel determined that claimants were ineligible for benefits from July 3, 1985, to July 20, 1985, in that they were unemployed because of a strike pursuant to § 8–73–109, C.R.S. (1986 Repl.Vol. 3B). These segments of the orders have not been appealed.

The Panel further ordered that claimants were entitled to a full award of benefits after July 20, 1985, pursuant to § 8–73–108(4), C.R.S. (1986 Repl. Vol. 3B). On review, employer contends that the Panel erred in concluding that each claimant's employment was terminated by July 20, 1985, when he was permanently replaced, thereby entitling him to benefits if otherwise qualified. Employer argues that the hearing officer's findings that claimants were involved in an ongoing labor dispute and that claimants refused to cross the picket line to work supported the conclusion that claimants were voluntarily unemployed and not entitled to benefits.

In *Clark v. Colorado State University*, 762 P.2d 698 (Colo.App.1988), we held that in unemployment compensation cases the Panel's jurisdiction is limited to acting in an appellate capacity in reviewing a hearing officer's findings and conclusions. Although the Panel in such cases is precluded from engaging in initial fact finding, as when it found here that by July 20, 1985 employer terminated the employment relationship with claimants, the Panel can "weigh" the evidence and reject a hearing officer's findings which, although supported by some evidence, are contrary to its great weight. *Clark v. Colorado State University, supra.*

Because the Panel applied an erroneous standard of review to the hearing officer's decisions, we set aside its orders and remand for reconsideration. However, to guide the Panel on reconsideration, we address the issues of law raised on review.

Employer argues that "permanent replacement" of a striking employee to set a termination and, hence, separation date are terms of art under federal labor law. In support of this contention, it cites *Laidlaw Corp*, 171 NLRB 1366, 68 LRRM 1252 (1968), *enforced*, 414 F.2d 99 (7th Cir.1969) (an economic striker remains employed during the entire labor dispute and permanent

replacement cannot be determined until after the strike and the employee unconditionally offers to return to work). Alternatively, employer contends that it is an employee's act of offering to return to work and being refused employment that sets the termination date. We are not persuaded.

Section 8-73-109, C.R.S. (1986 Repl.Vol. 3B) excludes coverage for any period of unemployment "due to" a strike or labor dispute. During the existence of a labor dispute in Colorado, the employer-employee relationship is merely suspended. *Sandoval v. Industrial Commission,* 110 Colo. 108, 130 P.2d 930 (1942); *Pierce v. Industrial Commission, supra.* However, the relationship may be terminated if the employer permanently replaces the striking employee. *Pierce v. Industrial Commission, supra.* (The employment relationship may also terminate when an employee accepts a permanent position with another employer with intent not to return to the prior job when the labor dispute is ended). We hold that the issue of whether an employer has permanently replaced an employee, and thereby severed the labor dispute as the cause of unemployment, is a question of fact to be determined by the employer's actions in each case. *See Krantz v. Kelran Constructors, Inc., supra.*

When an employer permanently replaces an employee, the employer's action severs the labor dispute as the cause of a claimant's unemployment, and the claimant is no longer voluntarily unemployed. *See Krantz v. Kelran Constructors, Inc., supra; Pierce v. Industrial Commission, supra. See also* § 8-73-109(1), C.R.S. (1986 Repl.Vol. 3B) (ineligibility for benefits exists when unemployment is "due to," *i.e.,* "caused by" a strike or labor dispute). Once the trade dispute has been severed as the cause of claimant's unemployment, any related factors occurring thereafter, such as the existence of an ongoing labor dispute, the claimant's offer to return to work, or the claimant's state of mind, are irrelevant to the determination of claimant's eligibility for unemployment compensation benefits. *See Pierce v. Industrial Commission, supra.*

This construction of Colorado's statutory unemployment benefits scheme supports its underlying major policies relative to labor disputes. It allows for an award of unemployment compensation benefits to those who are unemployed through no fault of their own. Section 8-73-108(1)(a), C.R.S. (1986 Repl. Vol. 3B). And, it liberally construes the statute to effectuate that purpose. *Sandoval v. Industrial Commission, supra.*

Moreover, it furthers the state's neutrality in any labor dispute while not requiring an employer to finance a strike against itself. *See F.R. Orr Construction Co. v. Industrial Commission,* 188 Colo. 173, 534 P.2d 785 (1975); *see also Brobston v. Arizona Employment Security Commission,* 94 Ariz. 371, 385 P.2d 239 (1963). An employer receives the full protection of § 8-73-109, C.R.S. (1986 Repl.Vol. 3B) during the progress of the labor dispute so long as it does not act affirmatively to end the employment status of the striking worker. If, however, an employer acts to terminate the employment status during the labor dispute, thereby disturbing the status quo, the policies for affording the protection disappear. *Cf. Marathon Electrical Manufacturing Corp. v. Industrial Commission,* 269 Wis. 394, 69 N.W.2d 573 (1955).

We reject employer's contention that a claimant's termination should be determined pursuant to federal labor law. We find no authority, and employer cites none, to indicate that we are bound by federal labor law in construing our statutory unemployment compensation benefits scheme as it relates to eligibility of striking workers for unemployment compensation benefits. *See New York Telephone Co. v. New York Department of Labor,* 440 U.S. 519, 99 S.Ct. 1328, 59 L.Ed.2d 553 (1979); *Warner Press, Inc. v. Review Board of Indiana,* 413 N.E.2d 1003 (Ind.App.1980); *cf. Wagner & Sons Construction, Inc. v. Pagels,* 720 P.2d 987 (Colo.App.1986). Furthermore, we discern no compelling policy reason to engraft the complex federal statutory labor scheme, with its unique definitions, policies, and concepts onto our statutory unemployment benefits scheme. *See In re Sarvis,* 296 N.C. 475, 251 S.E.2d 434

(1979); *cf. Insul–Lite Window & Door Manufacturing, Inc. v. Industrial Commission,* 723 P.2d 151 (Colo.App.1986).

■ We also decline to follow those jurisdictions which require a striking employee unilaterally to abandon the strike or dispute and offer to return to work and be refused employment, regardless of whether the employee already has been permanently replaced, before becoming eligible for unemployment compensation benefits. *See Rice Lake Creamery Co. v. Industrial Commission,* 15 Wis.2d 177, 112 N.W.2d 202 (1961); *Building Products Co. v. Arizona Department of Economic Security,* 124 Az. 437, 604 P.2d 1148 (1979); *Colee v. Employment Division,* 25 Or.App. 39, 548 P.2d 167 (1976); *In re Sarvis, supra.*

Given the disposition of this case, we need not address the other contention raised by the claimants.

The orders are set aside and the causes are remanded with directions that the Panel consider the hearing officer's findings in accordance with the standard specified in *Clark v. Colorado State University, supra,* and the legal principles established herein.

HUME and NEY, JJ., concur.