Manuel FEDERICO; Ronald E. Baird; Dean A. Cummings; Richard L. Goodnight; James A. Hall; Lee Higginbotham; Larry H. Hubler; Gale L. Donnelly; Elery H. Mefford; Donald K. Mefford; John A. Lauro; Floyd J. Mansfield; Theodore Jimenez; Leonard H. Johnson; Richard W. Lanter; Orson J. Matteson; Dorlin M. Thompson; Barry J. Todd; Harvey A. Williams; Jose E. Romo; Robert L. Saul; Joseph H. Marcus; Larry E. Owen; Ronald L. Owen; Rudolph L. Palomino; David Scheibley; Louis Siefford; George S. Sims; Ronald W. Stockley; and Eugene Romero, Petitioners/Cross–Respondents,

v.

BRANNAN SAND & GRAVEL CO., Respondent/Cross–Petitioner,

and

The Industrial Claim Appeals Office of the State of Colorado and the Division of Employment and Training for the Colorado Department of Labor and Employment; and Pedro Leal, Respondents/Cross–Respondents.

No. 88SC587.

Supreme Court of Colorado, En Banc.

March 19, 1990.

Boyle & Tyburski, Susan J. Tyburski, Denver, for petitioners/cross-respondents Manual Federico, Ronald E. Baird, Dean A. Cummings, Richard L. Goodnight, James A. Hall, Lee Higginbotham, Larry H. Hubler, Gale L. Donnelly, Elery H. Mefford, Donald K. Mefford, John A. Lauro, Floyd J. Mansfield, Theodore Jimenez, Leonard H. Johnson, Orson J. Matteson, Dorlin M. Thompson, Barry J. Todd, Harvey A. Williams, Jose E. Romo, Robert L. Saul, Joseph H. Marcus, Larry E. Owen, Ronald L. Owen, Rudolph L. Palomino, David Scheibley, Louis Siefford, George S. Sims, Ronald W. Stockley and Eugene Romero.

Fogel, Keating and Wagner, P.C., Scott Meiklejohn and David R. Struthers, Denver, for petitioner/cross-respondent Richard W. Lanter.

Bradley, Campbell & Carney, P.C., Jim Michael Hansen, Earl K. Madsen and K. Preston Oade, Jr., Golden, for respondent/cross-petitioner Brannan Sand & Gravel Co.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sol. Gen., and John August Lizza, Asst. Atty. Gen., Denver, for respondents/cross-respondents Indus. Claim Appeals Office of the State of Colo. and Div. of Employment and Training for Colorado Dept. of Labor and Employment.

Pedro Leal, respondent/cross-respondent pro se.

Justice ERICKSON delivered the Opinion of the Court.

In this consolidated unemployment compensation case involving a number of employees, respondent Brannan Sand and Gravel Company (Brannan) appealed decisions of the Industrial Claim Appeals Panel (Panel) that set aside in part hearing officer orders denying unemployment compensation to the employee-petitioners (claimants). The court of appeals consolidated the appeals and, in *Brannan Sand & Gravel Co. v. Industrial Claim Appeals Office*, 762 P.2d 771 (Colo.App.1988), held that the Panel improperly substituted its own findings of fact for those of the hearing officer and set aside the Panel's orders. We granted certiorari and now affirm the court of appeals and return this case to the court of appeals with directions.

I.

The claimants were members of a local union employed by Brannan pursuant to a collective bargaining agreement entered into by Brannan and the union. The agreement expired on June 30, 1985, and Brannan and the union had failed to negotiate another agreement when the union called a strike against Brannan on July 3, 1985. The claimants participated in the strike and refused to report to their jobs with Brannan. On July 3, 1985, Brannan notified the claimants of their possible replacement in a letter which provided: .

> For those employees who wish to work and return to work, employment is available. If you choose not to return to work, it will be necessary to seek a permanent replacement for you. Needless to say, if such a replacement is hired before you make an unconditional offer to return to work, you will not have a job with us at that time.

By July 20, 1985, the claimants had not returned to work and Brannan had hired

enough replacement workers to resume its normal operations.

The claimants filed claims for unemployment benefits. The deputy awarded the claimants compensation and Brannan appealed the awards to the hearing officer.[1] The hearing officer made the following pertinent findings: (1) the labor dispute between the union and Brannan was ongoing at the time of the hearing and none of the claimants had been formally discharged; (2) Brannan hired replacement workers for trucks that had previously been assigned to the claimants, but other trucks were available; and (3) although Brannan could not put all of the claimants to work, it did have positions available for some of the claimants if they chose to return. The hearing officer concluded that the claimants were not eligible for unemployment benefits since their unemployment was due to the labor dispute and that Brannan had not discharged the claimants and had positions available at the time of the hearing.

The claimants appealed to the Industrial Claim Appeals Office.[2] The Panel upheld the denial of benefits to the claimants for the period from July 3 to July 20, 1985. However, the Panel found that the claimants had been permanently replaced as of July 20, 1985 and were entitled to unemployment benefits from that date.

Brannan appealed. The court of appeals, relying on *Clark v. Colorado State University*, 762 P.2d 698 (Colo.App.1988), found that section 24-4-105(15)(b), 10A C.R.S. (1988) (State Administrative Procedure Act), provides the applicable standard of review of hearing officer decisions by the Industrial Claim Appeals Panel.[3] *Bran-*

*nan Sand & Gravel Co.*, 762 P.2d at 773. Since the Panel found that the claimants had been permanently replaced as of July 20, 1988, the court of appeals held that the Panel did not follow the appropriate standard of review. *Id.* In addition, the court of appeals found that the employer-employee relationship could be ended by the permanent replacement of a striking worker and, after permanent replacement, the employee would be eligible for unemployment benefits. *Id.* at 774. The court of appeals stated that whether an employee has been permanently replaced is a question of fact and that a claimant's offer to return to work is irrelevant to the determination of whether an employee has been permanently replaced. *Id.* at 774–75.

The claimants petitioned for certiorari review of that part of the court of appeals decision that set aside the Panel's orders. Brannan cross-petitioned for certiorari review of the court of appeals conclusion that a striking employee need not offer to return to work and be refused employment in order to be eligible for unemployment benefits. In granting certiorari, we elected to review the issues raised in both the petition and the cross-petition.

## II.

The Employment Security Act, title 8, articles 70 to 82 of the Colorado Revised Statutes, was enacted to protect workers who become unemployed through no fault of their own from financial hardship. Section 8-70-102, 3B C.R.S. (1986). Section 8-73-109, the strike disqualification statute, provides that "[a]n individual is ineligible for unemployment compensation bene-

---

**1.** A deputy is appointed by the director of the division of employment and training and has statutory authority to initially decide the validity of a claim for unemployment benefits. Section 8-74-102, 3B C.R.S. (1986). A dissatisfied party may appeal a deputy's decision to a hearing officer. Section 8-74-103(1), 3B C.R.S. (1986). The hearing officer is authorized to conduct hearings and to enter findings of fact and conclusions of law. Sections 8-74-103(2), (3).

**2.** A party may appeal the decision of a hearing officer to the Industrial Claim Appeals Office. Sections 8-1-102(1), 8-74-104(1). The Industri-

al Claim Appeals Office conducts administrative review through the Industrial Claim Appeals Panel. *See* § 8-1-102(1).

**3.** Section 24-4-105(15)(b), 10A C.R.S. (1988), provides in part:

The findings of evidentiary fact, as distinguished from ultimate conclusions of fact, made by the administrative law judge or the hearing officer shall not be set aside by the agency on review of the initial decision unless such findings of evidentiary fact are contrary to the weight of the evidence.

fits for any week with respect to which the division finds that his total or partial unemployment is due to a strike or labor dispute...." The statute expresses a legislative policy of neutrality in labor disputes and, in furtherance of this policy, does not require an employer to fund a strike against itself through unemployment compensation. *See F.R. Orr Constr. Co. v. Industrial Comm'n*, 188 Colo. 173, 183, 534 P.2d 785, 791 (1975). Throughout the duration of the labor dispute, the employer-employee relationship is suspended and the employee's unemployment is held to be "due to" the dispute. *Sandoval v. Industrial Comm'n*, 110 Colo. 108, 119, 130 P.2d 930, 935 (1942). However, once the employer-employee relationship is terminated, the employee's unemployment is no longer considered to be "due to" the dispute and the employee is eligible for unemployment benefits. *Ruberoid Co. v. California Unemployment Ins. Appeals Bd.*, 59 Cal.2d 73, 76–77, 378 P.2d 102, 105–06, 27 Cal. Rptr. 878, 881–21 (1963). The relationship is terminated by the discharge of the employee, by the employee's acceptance of permanent employment with a different employer, or by the permanent replacement of the employee. *Pierce v. Industrial Comm'n*, 38 Colo.App. 85, 87–88, 553 P.2d 402, 404 (1976).

The question of what causes a permanent replacement to occur has been addressed by a number of courts. One line of authority holds that an employee must abandon the labor dispute, unconditionally offer to return to work and be refused employment by the employer to be terminated as a result of permanent replacement. *See, e.g., Four Queens, Inc. v. Board of Review*, —— Nev. ——, 769 P.2d 49 (1989). Other courts have held that an employee's unemployment is no longer due to the labor dispute if that employee has been permanently replaced, and do not require the employee to offer to return to work and thereafter be refused. *See, e.g., Baugh v. United Tel. Co.*, 54 Ohio St.2d 419, 377 N.E.2d 766 (1978).

■ The court of appeals held that the determination of whether the employer-employee relationship has been severed as the result of permanent replacement of the employee is a question of fact to be determined under the circumstances of each case and that an offer to return to work and a refusal thereof is not a prerequisite to a finding of termination. *Brannan Sand & Gravel Co.*, 762 P.2d at 774–75. We agree. This conclusion comports with both the policies underlying section 8–73–109 and the policies underlying the Employment Security Act as a whole. While a striking employee is involved in a labor dispute, the state's policy of neutrality is furthered by the denial of unemployment compensation to the employee. However, after the employer-employee relationship is terminated for any of the reasons set forth in *Pierce v. Industrial Commission*, the policy of state neutrality in labor disputes is no longer implicated and the policies underlying the Employment Security Act as a whole are furthered by an award of unemployment benefits.

### III.

■ We must determine the standard of review that the Industrial Claim Appeals Panel must employ when reviewing the decision of the hearing officer. In *Clark v. Colorado State University*, 762 P.2d 698 (Colo.App.1988), the court of appeals held that section 24–4–105(15)(b), 10A C.R.S. (1988), sets forth the appropriate scope of review to be employed by the Panel when conducting appellate review of hearing officer decisions. *Id.* at 700. We agree.

Prior to 1986, the Industrial Commission was vested with the ultimate factfinding authority with regard to unemployment compensation matters. *Id.* at 679. Pursuant to the Employment Security Act, the Industrial Commission was empowered to conduct a de novo review of hearing officer decisions, was authorized to make its own findings of fact, and was allowed to apply its special expertise and knowledge of unemployment compensation matters. Ch. 39, sec. 1, § 8–74–104, 1976 Colo.Sess. Laws 354, 355; *Clark*, 762 P.2d at 699. The provisions of the State Administrative Procedure Act, sections 24–4–101 to –108,

10A C.R.S. (1988), did not apply to review of unemployment compensation matters by hearing officers, *the Industrial Commission,* and the courts. Ch. 39, sec. 1, § 8–74–106(1)(f)(II), 1976 Colo.Sess. Laws 354, 356–57.

The Employment Security Act was amended in 1986, substantially changing the administrative review provisions of the Employment Security Act. The Industrial Commission was abolished. Section 24–1–121(2), 10A C.R.S. (1988). Within the Department of Labor and Employment, the Industrial Claim Appeals Office was formed and given the duty to conduct administrative *appellate review* of orders entered in unemployment and workers' compensation cases. Sections 8–1–102, 8–74–104, 3B C.R.S. (1986). The Panel was not authorized to make its own factual findings; review by the Panel was limited to the record previously submitted in the case. Section 8–74–104(2). Section 8–74–106(1)(f)(II) was amended to provide in part that "[t]he provisions of the 'State Administrative Procedure Act', article 4 of title 24, C.R.S., and particularly sections 24–4–105 and 24–4–106, C.R.S., shall not apply to *hearings and court review* under this article." (Emphasis added.) The statute does not expressly provide that the State Administrative Procedure Act is inapplicable to appellate review by the Industrial Claim Appeals Office and no other statutory provision specifically sets forth the standard of review to be employed by the Panel.

Section 24–4–107 provides that the State Administrative Procedure Act applies to every agency of the state having statewide territorial jurisdiction, unless the act conflicts with a "specific statutory provision relating to a specific agency," in which case the "specific statutory provision shall control." The General Assembly is presumed to have intended to change the law when a statute is amended. *Charnes v. Lobato,* 743 P.2d 27, 30 (Colo.1987). It is also presumed that the General Assembly has knowledge of existing statutory law including the State Administrative Procedure Act. *See Ingram v. Cooper,* 698 P.2d 1314, 1317 (Colo.1985) (the General Assembly was presumed to have knowledge of good time credit statutes when sentencing statutes were enacted). In this case, the legislature did not expressly provide a standard of review to be employed by the Panel when sections 8–74–104 and 8–74–106 were amended, and did not provide that the State Administrative Procedure Act is inapplicable to administrative appellate review by the Panel. We conclude that the legislature intended that section 24–4–105(15)(b) control the Panel's scope of appellate review of hearing officer decisions in unemployment compensation cases.

## IV.

■ The court of appeals set aside the Panel's orders on the grounds that the Panel applied an improper standard of review and substituted its own findings of fact for those of the hearing officer. Section 24–4–105(15)(b) of the State Administrative Procedure Act provides:

> The findings of evidentiary fact, as distinguished from ultimate conclusions of fact, made by the administrative law judge or the hearing officer shall not be set aside by the agency on review of the initial decision unless such findings of evidentiary fact are contrary to the weight of the evidence.

The issue, which the court of appeals did not address, is whether the hearing officer's findings constituted evidentiary facts or ultimate conclusions of fact.

Evidentiary facts are the raw historical data underlying the controversy. *Lee v. State Bd. of Dental Examiners,* 654 P.2d 839, 843 (Colo.1982); *Womack v. Industrial Comm'n,* 168 Colo. 364, 371, 451 P.2d 761, 764 (1969). Ultimate conclusions of fact, on the other hand, are conclusions of law or mixed questions of law and fact that are based on evidentiary facts and determine the rights and liabilities of the parties. *Lee,* 654 P.2d at 844. The distinction between evidentiary fact and ultimate conclusion of fact is not always clear, but an ultimate conclusion of fact is as a general rule phrased in the language of the controlling statute or legal standard. *See Lee,* 654 P.2d at 844.

Here, whether the claimants were permanently replaced was an issue of evidentiary fact. The other issue, which is an ultimate conclusion of fact subject to review by the Panel, is whether the claimants' unemployment is "due to a strike or labor dispute." The Panel, instead of weighing the evidence pursuant to section 24–4–105(15)(b), substituted its own findings that the claimants had been permanently replaced as of July 20, 1985 for the hearing officer's findings that Brannan continued to have work available to the claimants and that the claimants were not formally terminated.[4] The court of appeals properly set aside the Panel's orders. However, the hearing officer did not expressly find that the claimants had not been permanently replaced by Brannan. Upon remand, the Panel shall return the claimants' cases to the hearing officer for the determination of whether the claimants had been permanently replaced subsequent to July 20, 1985.

### V.

We conclude that an employee involved in a labor dispute is entitled to unemployment compensation benefits when the employer-employee relation has been terminated with respect to that employee. The employer-employee relationship can be terminated by the permanent replacement of the employee. The question of whether an employee has been permanently replaced is a question of evidentiary fact that cannot be set aside by the Panel on review of a decision of a hearing officer unless such a finding is contrary to the weight of the evidence in the record. *See Krantz v. Kelran Constructors, Inc.*, 669 P.2d 1049 (Colo.App.1983). The court of appeals correctly set aside the orders of the Panel in part since the Panel utilized an improper

standard of review in modifying the decisions of the hearing officer. Accordingly, we affirm the court of appeals and return this case to the court of appeals with directions to remand to the Industrial Claim Appeals Panel. Upon remand, the Panel shall return the cases of the individual claimants to the hearing officer for proceedings consistent with this opinion.

Justice MULLARKEY concurs in part and dissents in part.

Justice MULLARKEY concurring in part and dissenting in part:

I agree with the majority that the Administrative Procedure Act (APA) standard of review applies to the Industrial Claim Appeals Panel (panel) when it reviews a hearing officer's decision in an unemployment compensation matter. I respectfully dissent, however, from the majority's application of that standard in this case.

Section 24–4–105(15)(b), 10A C.R.S. (1988), provides in relevant part:

> The findings of evidentiary fact, as distinguished from ultimate conclusions of fact, made by the administrative law judge or the hearing officer shall not be set aside by the agency on review of the initial decision unless such findings of evidentiary fact are contrary to the weight of the evidence.

The distinction which the statute draws between findings of evidentiary fact and ultimate conclusions of fact often is difficult to apply. *See, e.g., Baca v. Helm*, 682 P.2d 474 (Colo.1984) (depending on circumstances, causation may be either an ultimate fact or an evidentiary fact). The importance of the statutory classification is that it determines whether the hearing officer or the agency has discretion over the

---

**4.** The hearing officer found the following with respect to each of the claimants:

On July 13, 1985, the employer sent a letter to the strikers explaining that work was available should they decide to return, but replacements were being hired and strikers would lose jobs unless they returned to work before such a replacement was hired. With the exception of a few strikers, the workers did not return to work and did not cross the picket line. They were reluctant to return due to the loss and/or reduction of union benefits. Replacements were hired and the employer's operation continued. These replacements were assigned to trucks that the strikers were normally assigned to. However, the employer did have and does have other trucks available. At no time was the claimant formally terminated. Work continues to be available to the claimant.

matter to be determined. In this case, the majority affirms the court of appeals' conclusion that permanent replacement is a question of evidentiary fact which may not be set aside by the panel unless it finds on review that the decision of the hearing officer is contrary to the weight of the evidence in the record. Maj. op. at 1269. However, I believe that the question of whether the employees were permanently replaced is properly classified as a question of ultimate fact and that therefore the panel acted within its authority in setting aside the determination of the hearing officer. *See Raisch v. Industrial Commission,* 721 P.2d 693 (Colo.Ct.App.1986) (court finds that hearing officer's determination that worker's compensation claimant was entitled to vocational rehabilitation was one of ultimate fact, reviewable by Industrial Commission).

First, in determining the proper scope of the panel's review in this case, we must consider section 8-73-109, 3B C.R.S. (1986), which provides in relevant part that:

> An individual is ineligible for unemployment compensation benefits for any week with respect to which the division finds that his total or partial unemployment is due to a strike or labor dispute....

Under the statute, then, the ultimate legal issue before the hearing officer and the panel was whether the claimants' unemployment was "due to a strike or labor dispute." In *Pierce v. Industrial Commission,* 38 Colo.App. 85, 553 P.2d 402 (1976), the court held that pursuant to section 8-73-109, unemployment is not "due to a strike or labor dispute" if an employee has been permanently replaced. Under *Pierce,* once a hearing officer has concluded that an employee has been permanently replaced, it follows that his unemployment is not "due to a strike or labor dispute" and therefore the employee is eligible for benefits.

The majority does not dispute that the question of whether a claimant's unemployment is "due to a strike or labor dispute" is a question of ultimate fact, but distinguishes that question from the issue of whether the claimants had been permanently replaced on the basis that an ultimate fact is a "general rule phrased in the language of the controlling statute or legal standard." Maj. op. at 1272. However, I disagree that merely because the question of whether the claimants have been permanently replaced is not specifically phrased by the statute the issue is not one of "ultimate fact." By deciding the question of whether the claimants have been permanently replaced, the hearing officer resolves the ultimate question of whether the claimant's unemployment was "due to a strike or labor dispute." The court of appeals' decision in *Pierce* in effect made "permanent replacement" coextensive with the statutory eligibility requirement that a claimant's unemployment not be "due to a strike or labor dispute." The majority does not suggest that the hearing officer was free to find that, although the employees had been "permanently replaced," their unemployment was "due to a strike or labor dispute." Thus, a finding of permanent replacement determines the employee's eligibility for benefits. It is dispositive.

Second, under the relevant legal standards adopted by this and other courts, the question of whether the claimants were permanently replaced is one of ultimate fact. Evidentiary facts are the detailed factual or historical findings upon which a legal determination rests. *Lee v. State Bd. of Dental Examiners,* 654 P.2d 839 (Colo. 1982). Findings of ultimate fact, as distinguished from raw evidentiary fact, involve a conclusion of law or at least a determination of a mixed question of law and fact and settle the rights of the parties. *Id.,* at 844. Evidentiary facts are based on the evidence presented at the hearing. Ultimate facts are conclusions acquired through reflection and reasoning based upon evidentiary facts and are necessary in order that a determination of the rights of the parties can become a question of law. *Baca,* 682 P.2d at 479 (Neighbors, J., concurring). *See also Woodbury Daily Times Co. v. Los Angeles Times—Washington Post News Serv.,* 616 F.Supp. 502, 505 (D.N.J.1985), *aff'd* 791 F.2d 924 (3d Cir. 1986) (ultimate fact is a mixture of fact and

law; fact because it is derived by inference or reasoning from the evidence; law because the derivation is informed by legal principles and policies, producing a fact of independent legal significance).

All parties here agree that (1) a labor dispute existed; (2) that the employer sent a letter to the workers telling them to return to work or be replaced; (3) that the employer has hired replacements; and (4) that although certain positions remain open, there are insufficient positions to hire even a majority of the employees. These are the evidentiary facts. They are the detailed historical findings upon which the legal determination must rest, developed through the evidence presented before the hearing officer. Only a question of ultimate fact remains: whether, under these evidentiary facts, the claimants' unemployment is "due to a strike or labor dispute" or whether they have been permanently replaced. This question of ultimate fact must be resolved through reflection and reasoning based upon the evidence and "informed by legal principles and policies." *Woodbury Daily Times*, 616 F.Supp. at 505. Further, the resolution of this question determines the rights of the parties. *See Lee*, 654 P.2d at 844. When considered in this light, it becomes clear that the question of "permanent replacement" must be characterized as one of ultimate fact properly subject to review by the panel. Because I believe that the panel properly found that the claimants were permanently replaced, I would reverse the decision of the court of appeals. For the foregoing reasons I respectfully dissent from the majority's decision upholding the court of appeals' reversal of the panel.