**60**

Regina L. ABBOTT, and Other Members of United Food and Commercial Workers Local 7, Petitioners,

v.

The INDUSTRIAL CLAIM APPEALS OFFICE OF the STATE OF COLORADO, and Dillon Companies, Inc., Respondents.

No. 89CA0842.

Colorado Court of Appeals, Div. V.

April 26, 1990.

Rehearing Denied May 24, 1990.

Certiorari Denied Sept. 10, 1990.

John P. Bowen, Wheat Ridge, for petitioners.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Mary Ann Whiteside, First Asst. Atty. Gen., Denver, for respondent Industrial Claim Appeals Office of the State of Colorado.

Sherman & Howard, Charles W. Newcom, Gilbert M. Roman, Denver, for respondent Dillon Companies, Inc.

Opinion by Judge RULAND.

Petitioners, Regina L. Abbott and other members of United Food and Commercial Workers Local 7 (claimants), seek review of a final order of the Industrial Claim Appeals Office (Panel) which held that claimants were ineligible for unemployment compensation benefits for the period from May 10, 1987, through June 13, 1987. We affirm.

In the spring of 1987, a dispute arose in connection with the expiration of a labor contract between Dillon Companies, Inc., and the United Food and Commercial Workers Union Local 7. Prior to expiration of the contract on May 2, Local 7 and

Dillon attempted to negotiate a new contract. The union requested a one-year extension on the existing contract. Dillon was not willing to reach agreement on that basis and requested a number of concessions.

When Dillon persisted in its efforts to negotiate concessions, Local 7 gave Dillon a ten-day strike notice on April 27. On April 28, Dillon notified Local 7 that after May 2, it would honor only those contract provisions it was required to honor by law.

Dillon and Local 7 then agreed to extend the contract until May 8 and negotiations continued. On May 5 and 6, Dillon presented what it denominated as "its last, best and final offer" in the negotiations. However, testimony presented on behalf of Dillon indicated that the offer was not necessarily final, that an impasse between the parties had not been reached, and that it was prepared to negotiate further if any significant counterproposal was made by Local 7.

Instead, in response to Dillon's "final offer," Local 7 withdrew its offer to continue the existing contract on May 7. On May 8, the union established picket lines, and its members stopped reporting to work.

After picketing was initiated, Dillon notified the union that a "legal impasse" existed and implemented the provisions of its May 5 "final offer." Throughout the negotiations and the strike, work was available to the claimants through Dillon. The parties finally resolved their dispute in June.

The hearing officer found that the cause of the cessation of claimants' work was not Dillon's "final offer." Rather, the hearing officer found that cessation of work resulted from initiation of the strike. Accordingly, the hearing officer concluded that claimants were precluded from receiving unemployment compensation benefits by § 8–73–109(1), C.R.S. (1986 Repl.Vol. 3B). The Panel affirmed.

■ Section 8–73–109(1) provides:

"An individual is ineligible for unemployment compensation benefits for any week with respect to which the division [of Employment and Training] finds that his total or partial unemployment is due to a strike or labor dispute.... If his unemployment is due to a lockout ... the individual will not be determined ineligible unless the lockout results from the demands of employees as distinguished from an effort on the part of the employer to deprive the employees of some advantage they already possess."

In some jurisdictions, an employer is deemed to create a "constructive lockout" if an ultimatum is issued to the employees with unreasonable terms such that the employees have no alternative but to strike. *See Sunstar Foods, Inc. v. Uhlendorf,* 310 N.W.2d 80 (Minn.1981). On review, claimants contend that the Panel erred in affirming the hearing officer because Dillon created a constructive lockout by issuing its "final offer." We find no merit in this contention.

We concur with the Panel that, even if we assume that the constructive lockout doctrine applies in this jurisdiction, there is no basis for its application here. This is because the hearing officer specifically found as an ultimate finding of fact that the cessation of claimants' work resulted from a strike and not from the issuance of the "final offer."

In sum, the hearing officer obviously believed testimony presented on behalf of Dillon that the "final offer" was neither intended to conclude negotiations nor to preclude other concessions by Dillon, and that the strike precipitated implementation of the final offer. Like the Panel, we are unable to conclude that this finding is contrary to the weight of the evidence. *See Federico v. Brannan Sand & Gravel Co.,* 788 P.2d 1268 (Colo.1990).

■ Finally, contrary to the analysis in *Erie Forge & Steel Corp. v. Unemployment Compensation Board of Review,* 400 Pa. 440, 163 A.2d 91 (1960), we do not construe § 8–73–109(1) as imposing any duty upon Dillon to adhere to the terms of an expired contract for a reasonable time in order to avoid liability for unemployment benefits due to a lockout.

The order is affirmed.

JONES, J., concurs.

DUBOFSKY, J., dissents.

Judge DUBOFSKY dissenting.

I respectfully dissent.

I conclude that, under the factual circumstances presented here, the actions and statements of Dillon constituted a constructive lockout under state law before it even implemented its last, best, and final offer.

For approximately one year prior to the strike, Dillon distributed literature stating that a significant reduction in compensation would be imposed had to occur when the existing contract expired. Further, Dillon's May 5–6 statements that this was its last, best, and final offer and its implicit threat to impose those compensation terms was, in my view, the cause of the labor stoppage. This conclusion is buttressed by the fact that immediately after the "strike" began Dillon implemented the threatened compensation reductions. The self-serving testimony of its employees is the only evidence offered by Dillon to support its contention at the unemployment hearing that this is not a "final offer."

Although under certain circumstances statements by employers and employees can be understood as posturing for further negotiations, here, the record demonstrates that Dillon intended to implement its "final offer." These actions and statements of Dillon can readily be construed as positioning the negotiation process in such a manner that a strike by the union was virtually mandated. That strike, in turn, allowed Dillon to claim an "impasse" was reached and thereby impose the terms of its final offer.

On this basis I believe the evidence is insufficient to support the ALJ's conclusion that the employee "strike" caused the work stoppage. Therefore, I see this situation as being governed by those cases which find a constructive lockout, if, as here, the employer imposes a significant reduction in compensation. *See e.g. Sunstar Foods, Inc. v. Uhlendorf,* 310 N.W.2d 80 (Minn. 1981); *Bunny's Waffle Shop, Inc. v. California Employment Commission,* 24 Cal.2d 735, 151 P.2d 224 (1944); *Johns–*

*Manville Products Corp. v. Board of Review,* 122 N.J.Super 366, 300 A.2d 572 (1973). This approach is consistent with § 8–73–108(3), C.R.S. (1986 Repl.Vol. 3B) which grants unemployment compensation benefits to employees who leave their employment because of a significant reduction in compensation.

However, since posturing is an integral part of the bargaining process and since it can be difficult to determine which words or actions of the parties were the initial cause of the work stoppage, I would adopt the rule first announced in *Erie Forge & Steel Corp. v. Unemployment Compensation Board of Review,* 400 Pa. 440, 163 A.2d 91 (1960) and followed most recently in *Eastalco Aluminum Co. v. Board of Appeals,* 314 Md. 460, 551 A.2d 121 (1988).

In the *Erie Forge* ruling, the court determined that if a union is willing to operate under the prior contract for a "reasonable period of time" after its expiration, then the employer must also do so or be found to have constructively discharged the members of the union so as to make them eligible for unemployment compensation. In *Eastalco Aluminum Co. v. Board of Appeals, supra,* the court stated:

"It is our view that a determination of lockout status should not be limited to an actual physical closing of a place of employment. The following factors are proper considerations for an administrative body or for a reviewing court in the determination of lockout status:

(1) Have the employees offered to continue working, pending negotiation and for a reasonable time, under the same terms and conditions of the expired collective bargaining agreement.

(2) Has the employer agreed to permit work to continue for a reasonable time under the preexisting terms and conditions of employment pending further negotiations.

If the employer refuses to extend the expiring contract and maintain the status quo, then the resulting work stoppage constitutes a 'lockout.' .... This assessment should be made objectively

without any analysis of the merits of the labor dispute."

Under these decisions, both parties must accept the terms of the prior contract for a reasonable time while they negotiate a new contract. This approach avoids the type of statements and actions which, as here, precipitate "strikes." It also fosters an atmosphere in which there will be a more reasoned discussion of the issues.

I view Dillon's admitted actions here as constituting a constructive discharge of claimants; therefore, I would set aside the order of the Panel and remand the cause with directions that claimants be awarded unemployment compensation benefits.